LANGEN, Appellant, vs. BORKOWSKI and others, Respondents.

*October 21—December 8, 1925.*

*Appeal: Related actions considered together: Relief available in equity actions: Court of general jurisdiction: Liability of judge for erroneous or wrong decision: Of attorney to action: Of clerk or sheriff executing order or decree: Of party requesting wrong action of court: False imprisonment: Commitment for contempt: Form.*

1. The present action for damages for false imprisonment being based on proceedings had in an action to enjoin the enforcement of the writ of restitution issued on a judgment in an action of unlawful detainer, and the facts in the two actions being closely allied, this court may properly consider the former together with the decision therein.  p. 290.
2. Though the prayer in an action to enjoin the enforcement of a writ of restitution is for an order enjoining the sheriff from evicting plaintiff and those holding under him from the premises involved, a court of equity has power in its discretion to grant any appropriate relief.  p. 291.
3. The circuit court, in view of sec. 8 of art. VII of the constitution, is a court of general jurisdiction; and where facts are present which have either legal value or color of legal value, a judge of such court is immune from liability for error committed, even though it be subsequently held that as a matter of law he had no jurisdiction whatever.  He is liable only where there is clearly an utter lack of jurisdiction, and where the facts presented. have no legal value or color of legal value.  p. 292.

4. A court in imposing punishment for contempt under sec. 3477, Stats. 1923, is presumed to act within the limits of its jurisdiction until the contrary appears; and by the terms of such statute the court has power to punish not only parties to actions, for contempt, but *all other persons,* which clearly includes witnesses. p. 295.

5. In this case a judge of the circuit court is immune from liability for any error in committing plaintiff for contempt in failing to account for rentals accruing from the tenancy of property, though he may have lacked jurisdiction of plaintiff's person, where a judicial question was fairly and squarely raised which called upon the court for a decision based upon actual facts or at least colorable facts, it being immaterial that he is alleged to have acted wilfully and with intent to injure the plaintiff. p. 296.

6. The commitment for contempt is not invalid for the failure to make a personal demand on plaintiff and to show his failure to comply with such demand by affidavit, as such failure constituted nothing more than an irregularity or error, the order to show cause, which was personally served on plaintiff, answering the purpose of a personal demand, and under the order of commitment the plaintiff being given at all times an opportunity to be released from imprisonment by complying with the order. p. 297.

7. The judge of the circuit court is immune from liability for any error in failing to commit plaintiff to the county jail for civil contempt instead of to the house of correction, so that jail liberties could have been allowed, since the decision of the matter rested with the court and presented a judicial question, and it was not alleged that plaintiff at any time availed himself of any privilege which he might have to jail liberties. p. 298.

8. Failure to raise a point in the trial below does not deprive this court from considering the same on appeal. p. 299.

9. The sheriff and the inspector of the house of correction are immune from liability on the warrant of commitment, valid on its face, because directed to the sheriff instead of to the inspector, where the sheriff, pursuant to the order of commitment, delivered the prisoner to the house of correction, thereby leaving him in charge of the officer who, under ch. 56, Stats., had legal custody of the prisoner. p. 299.

10. The clerk of the court is also immune from liability on the warrant where it was regular on its face, he being liable only when he does not exercise proper care and diligence in the performance of his duty. p. 300.

11. An attorney at law is an officer of the court with both public and private obligations; and an attorney instigating and counseling the court to pursue proceedings which resulted in the writ of commitment and the imprisonment of plaintiff is immune from liability where he was justified in so acting for his client and his action was in accordance with his oath. p. 301.

12. A litigant at whose request and on whose behalf proceedings were prosecuted resulting in the issuance of the writ and the imprisonment of plaintiff is immune from liability where it did not appear that he did anything further than to sit quietly by and permit his counsel and the court to protect his interests. p. 304.

APPEAL from two orders of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

The appeal is from orders sustaining the demurrers of the defendants to the plaintiff's complaint.

The action is one to recover damages for false imprisonment. The material and substantial allegations of the complaint are as follows: That on or about the 1st day of November, 1921, an injunction action was commenced in the circuit court for Milwaukee county by one Fred J. Lancaster against the defendant *Frank Borkowski* and Patrick J. McManus, as sheriff of Milwaukee county, to enjoin the said McManus, as such sheriff, from executing and enforcing a writ of restitution issued on a judgment entered in an action of unlawful detainer in the civil court of Milwaukee county in which said defendant *Frank Borkowski* was plaintiff and one Magdalena Langen was defendant; that the prayer in said injunction action was as follows:

"Wherefore, plaintiff prays . . . that the said defendant Patrick J. McManus, as the sheriff of Milwaukee county, be absolutely restrained and enjoined from removing under and by virtue of said writ of restitution, or any other writ that may be issued on said judgment, said furniture from said premises, and from molesting or in any manner interfering with the tenants of plaintiff in possession of said premises, thereunder, and that said defendant *Frank Bor-*

*kowski* be absolutely restrained and enjoined from in any manner proceeding under said judgment against plaintiff or his said property, and that the plaintiff have such other and further relief," etc.

That neither of said defendants in said Lancaster action interposed any counterclaim; that no demand for money was made or pleaded therein by any party thereto except for costs; and that there was no issue in relation to money raised or litigated in said action; and that the court in which said action was prosecuted did not get jurisdiction of any question or issue in relation to any money or money demand therein. That in said Lancaster action plaintiff was at no time served with a summons; that he did not appear as a party defendant thereto or in any other capacity, and that he was not interpleaded as a party to such action; that the plaintiff at no time had a subpœna served upon him nor was he paid a witness fee; that on the 23d day of May, 1923, on the application of the defendant *Borkowski,* made by his attorney (the defendant *Hackbarth*), the circuit court for Milwaukee county, by the defendant *Lawrence W. Halsey,* issued an order directed to this plaintiff by name, in such action, that on the 25th day of May, 1923, at the opening of court on that day, the plaintiff show cause:

"Why he should not prepare, render, and furnish to this court an accurate statement or account of all moneys due for rent of the premises, or collected by him as rent from said premises, 517 Harmon street, Milwaukee, Wisconsin, for any party or persons, and to designate the amount of such trust fund and the location of said trust fund, and all information and details concerning the same; and in case of his failure so to do, why an order should not be made by this court adjudging said *William M. Langen* in contempt of court for failure to comply with the directions of said court concerning such account or trust fund or such money, and to be punished for such contempt by said court; and why said defendant *Borkowski*

should not have such other and further order and relief in the premises as may be just and proper."

That at the time set in said order to show cause plaintiff appeared specially and filed therein a written document that he denominated a "Response on order to show cause," which read as follows:

"*William M. Langen* appearing specially, in person, in response to the order dated May 23, 1923, to show cause as directed by this court in the above entitled action (1) why he should not prepare, render, and furnish to this court an accurate statement or account of all moneys (a) due for rent of the premises, or (b) collected by him from the premises 517 Harmon street, or why (2) he should not be adjudged in contempt of court if he fails to do so,

"Hereby objects to this proceeding, or any proceeding under said order to show cause, and moves the court to dismiss the same on the grounds:

"1. That there is no such action pending in the said court, it having been dismissed by the court fully and finally on the 22d day of May, 1923, as respondent is informed, after refusing to hear testimony offered May 22, 1923.

"2. That this respondent, *Wm. M. Langen,* was not a party to the said action, either on the part of the prosecution or on the part of the defense, no summons having been served upon him, and he never having appeared therein as a party thereto, and no order ever having been made making him such.

"3. That there was no issue of the payment or collection of money by anybody involved in the above entitled action, the same having been brought by Fred Lancaster, plaintiff therein, for the purpose of obtaining an injunction against the defendants therein, and for that purpose only.

"4. That this court has no jurisdiction to enforce an accounting from or by anybody on any account in the above entitled action, not having by due and regular process of law obtained jurisdiction.

"5. That this court has not obtained jurisdiction of either the subject matter mentioned in said order to show cause, or the person of the said *William M. Langen,* this objector, in or by the above entitled action."

The complaint further alleges:

"That the said defendant *Lawrence W. Halsey,* presiding as judge in said court at said time, entirely disregarding and ignoring said objections and the facts set up in said document so filed by plaintiff, . . . ordered this plaintiff to the witness stand, and, disregarding a verbal objection to the proceedings made by plaintiff, after asking him a question or two on his, said judge's, own account, informed *Borkowski's* attorney, the defendant *Hackbarth* herein, that he was at liberty to ask this plaintiff any questions he might choose to ask, and said attorney proceeded to question this plaintiff in relation to money that he claimed plaintiff had taken from or for him, said Lancaster, for any purpose, although this plaintiff was in no manner, nor for any purpose, liable to account to said *Borkowski,* or for his use and benefit, for any money, or moneys, whatsoever.

"That on June 18, 1923, the court, by said defendant *Lawrence W. Halsey,* made an order in said action of Lancaster v. Borkowski and McManus, as sheriff, . . . as follows:

" 'It is hereby ordered that the said *William M. Langen* pay to the clerk of this court at his office in the court house in the city of Milwaukee, Wisconsin, on or before ten days from the 25th day of May, 1923, during office hours, the said sum of $1,035, and that in case of his failure to pay said sum as aforesaid, the said *William M. Langen* be and hereby is adjudged in contempt of this court, and upon the filing in this court of an affidavit by either said defendant *Borkowski,* his attorney, or the clerk of this court, showing that said sum has not been so paid or deposited with said clerk, the said *William M. Langen* be punished for such contempt by confinement in the house of correction of Milwaukee county for a term not exceeding ninety days from the day he is taken into custody under and by virtue of the writ of commitment to be issued herein in case of default; provided, however, that said *William M. Langen* may be discharged from said imprisonment by paying to the clerk of this court said sum of $1,035, besides the sum of $10 attorney's fees upon this application, and the costs and charges of the sheriff for the execution of the writ to be

issued herein. . . . That this order be entered *nunc pro tunc* as of May 25, 1923.

" 'Dated June 18, 1923.

" 'By the Court: LAWRENCE W. HALSEY, Circuit Judge.' "

The complaint then alleges that the clerk of said court, and no other person, at any time made a demand upon the plaintiff herein, and that he, the said *Langen,* at no time refused to pay to the said clerk the money so ordered to be paid by him. That the defendant *Halsey* thereupon, "presumptuously and unlawfully assuming that his court had jurisdiction to do so," ordered that a writ of commitment be issued directing that said plaintiff be incarcerated in the house of correction of Milwaukee county, which order read and reads as follows:

(After recitals) "Now, therefore, it is hereby ordered and adjudged that a writ for the commitment of said *William M. Langen* in accordance with the order made by this court on May 25, 1923, and signed by this court on June 18, 1923, be issued from and out of this court unless the sums referred to in said order be paid by the said *William M. Langen* before the issuance thereof. . . ."

That on or about the 1st day of August, 1923, said court by its clerk issued a writ of commitment to the sheriff of Milwaukee county, which writ, omitting details and recitals, among other things contained the following:

"Now, therefore, we hereby command you that you take the body of *William M. Langen,* hereinabove referred to, and commit him to the house of correction of the county of Milwaukee, Wisconsin, there to remain for a period not exceeding ninety (90) days from the day he is taken into custody under and by virtue of this writ, unless the said *William M. Langen* pay to the clerk of this court the sum of $1,035 hereinbefore referred to, besides the sum of $10 attorney fees and your costs and charges for the execution of this writ.

"Witness the Honorable *Lawrence W. Halsey,* Judge of said court, at the court house in the city of Milwaukee,

Milwaukee county, Wisconsin, on this 1st day of August, 1923.

"C. C. Maas, Clerk.
"By Chas. Scherer, Deputy.
"Friedrich & Hackbarth, Attorneys for defendant *Frank Borkowski.*"

That thereafter, on August 6, 1923, the sheriff served said writ and took plaintiff into custody, and delivered him into the custody of the inspector of the house of correction, where he was confined for a period of eighty-six days. That the unlawful proceedings herein were instituted and prosecuted at the instance and at the request of the defendant *Borkowski.* That the defendant *Hackbarth* is an attorney at law, duly admitted to practice; that he acted as one of the attorneys for said *Borkowski* in said case of Lancaster v. Borkowski and McManus, as sheriff, and counseled and instigated the court to pursue the unlawful proceedings and to make the unlawful orders in said action that culminated in the said imprisonment of the plaintiff.

That the defendant *Lawrence W. Halsey* is an attorney at law, duly admitted to practice his profession in this state; that he was for many years one of the judges of the circuit court for Milwaukee county; that with wilful, wanton, and malicious disregard of right and justice and of the rights of the plaintiff, and with intent to do plaintiff as much injury and damage as he could under the circumstances, he wrongfully and unlawfully had his court make the orders above herein complained of, and wilfully, wantonly, and maliciously caused the said imprisonment of said plaintiff.

That the defendant *Maas* was the clerk of said circuit court; that he was familiar with the law of the state with respect to the conduct of his office; that he knew or ought to have known that the said orders were void for want of jurisdiction in the court to make them, and were so void, both as to subject matter and as to person, and he knew

or ought to have known that the said purported writ of commitment which he issued was invalid both as to contents and form and as to directions to the sheriff of Milwaukee county, and that it was void in that if acted on by said sheriff as it directed such action would deprive plaintiff of the privilege of the jail liberties and of the right of trial by jury; and said clerk's act in issuing said purported writ of commitment was an act of wilful carelessness and neglect of plaintiff's rights that helped work plaintiff the great damage that came to him by and because of the said imprisonment.

That the defendant *Westfahl* wrongfully and illegally took plaintiff in custody, and wrongfully and illegally conveyed him to the house of correction of Milwaukee county, and wrongfully and illegally placed him in the custody of the inspector of that institution.

That the defendant *Momsen,* as such inspector of said house of correction, kept said plaintiff in custody in said institution; that said defendant knew or ought to have known that said purported writ of commitment was void, and should have refused to receive plaintiff into his custody or into said house of correction, but, instead of so doing, said *Momsen* held plaintiff in and to such imprisonment for eighty-six days.

Further necessary allegations of the complaint will be referred to in the opininon.

To this complaint the defendants separately demurred upon the ground that the complaint did not state facts sufficient to constitute a cause of action. Other grounds of demurrer were interposed, but were not considered by the trial court and are not argued or urged in this court. From the orders of the court sustaining these several general demurrers the plaintiff has taken this appeal.

For the appellant the cause was submitted on the brief of *Franklin P. Hopkins* of Milwaukee.

For the respondents *Borkowski* and *Hackbarth* there was a brief by *Friedrich & Hackbarth* of Milwaukee, and oral argument by *Otto G. Hackbarth.*

In support of the demurrers of the respondents *Halsey, Maas, Westfahl,* and *Momsen* there was a brief by *Eugene Wengert,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* first assistant district attorney, and oral argument by *Mr. Sullivan.*

DOERFLER, J.    The case of *Lancaster v. Borkowski,* 179 Wis. 1, 190 N. W. 852, referred to in the complaint herein, was before this court on appeal, and the rights of the parties were in the decision in that case construed and determined.    The substantial allegations of the complaint were set forth in the opinion, from which it appears:

". . . That on July 7, 1919, one Marie L. LaGrand was the owner of certain premises known as 517 Harmon street in the city of Milwaukee, and on that day leased the premises to one Magdalena L. Langen for the term of five years beginning the 1st day of August, 1919.    The said Magdalena Langen went into possession of said premises on or about the 9th day of July, 1919.    On the 22d day of March, 1921, Magdalena Langen made, executed, and delivered to the plaintiff a sublease of said premises, which referred to the lease between Marie LaGrand and Magdalena Langen and contained a clause to the effect that the plaintiff would 'abide by the covenants of the lease aforementioned' and other covenants.

"That on the 22d day of March, 1921, the plaintiff purchased from Magdalena Langen the furniture in the premises, went into possession of the premises, and has been in possession thereof from said date until the present time. It further appears that the plaintiff has paid the rent reserved in the lease as the same became due.

". . . That on or about the 15th day of October, 1921, the defendant Patrick McManus, sheriff of Milwaukee county, purporting to act pursuant to a writ of restitution issued out of the civil court of Milwaukee county, entered as of the 14th day of October, 1921, in an action of forcible

entry and unlawful detainer begun and prosecuted under the provisions of sec. 3358, Stats., wherein the defendant *Frank Borkowski* is named plaintiff and Magdalena Langen is named defendant, and, pursuant thereto, threatened to dispossess the plaintiff and his subtenants. . . .

". . . That he [Lancaster] was undertenant of Magdalena Langen; that no notice of any kind was served upon him nor was he served with a summons or any other notice from the plaintiff in the case wherein *Frank Borkowski* was plaintiff and Magdalena Langen was defendant. . . .

"The defendant *Borkowski* answered admitting the allegations as to the execution of the lease by Marie LaGrand to Magdalena Langen; admits that Magdalena Langen went into possession of the premises and that the premises in question were used as a rooming house; denies knowledge or information sufficient to form a belief as to whether Magdalena Langen had executed a lease to the plaintiff. The answer admits the placing of the writ of restitution in the hands of Patrick McManus as sheriff and that said McManus had threatened to dispossess plaintiff and his tenants; . . . admits that the plaintiff was not a party to the action in the unlawful detainer action. . . .

"The answer further alleges the execution and delivery of the lease by Marie LaGrand to Magdalena Langen and alleges that among other provisions said lease contained the following:

" 'Marie LaGrand, her respective heirs, executors, administrators and assigns, shall have the right to sell said premises at any time upon giving a ninety-days notice to the lessee terminating said lease, and said lessor paying to said lessee as liquidated damages the sum of $50 for each and every year that said lease has to run from the termination of said tenancy.'

"That on April 30, 1921, Marie LaGrand sold and conveyed to the defendant *Borkowski* . . . said leased premises; . . . that on April 30, 1921, Marie LaGrand caused written notice to be served upon Magdalena Langen in the manner provided by statute, informing her of the fact that said premises were sold and notifying said Magdalena Langen that said lease would terminate at the end of ninety days from the date of the service of said notice, and offering to pay to Magdalena Langen the sum of $50 for each of

the remaining years during which said lease had to run, and notifying said Magdalena Langen to vacate the premises upon the expiration of the ninety days; that the said Magdalena Langen failed to vacate the premises upon the expiration of ninety days and tender of $200, and on September 2, 1921, the defendant *Borkowski* began an action of unlawful detainer in the civil court of Milwaukee county. . . .''

Further it appears from said answer that said last named action was duly tried and determined by said civil court favorably to the plaintiff; that a writ of restitution was issued directing the sheriff of Milwaukee county to remove the occupants of said premises; that Fred Lancaster was an employee of Magdalena Langen, and that he was to receive for his services as such the use of a certain part of the premises for himself and his family; that all persons in possession of the premises, as roomers, employees, or otherwise, claim the right of possession by, through, or under Magdalena Langen, and occupy the premises subject to the conditions contained in the lease made by Marie LaGrand to said Magdalena Langen, dated July 7, 1919.

A temporary injunction by a court commissioner, restraining the defendants, their agents or servants from molesting the plaintiff or his property by virtue of the writ of restitution was thereupon issued, and, upon motion to make the temporary injunction permanent, the motion was denied and the temporary injunction dissolved. Plaintiff thereupon moved for judgment upon the pleadings, which motion was also denied. Plaintiff appealed from both orders.

In the opinion of this court, after holding that the order denying plaintiff's motion for judgment on the pleadings is not appealable, it further decided:

"The equities in this case depend upon the conclusiveness of the judgment in the action of unlawful detainer upon persons claiming under the defendant in that action. It seems to be well established that all parties entering upon land after suit is brought for its recovery are in possession

in subordination to the defendant and are equally liable to be removed under the writ against him. . . .

"However, persons in possession of the premises prior to the commencement of the action, claiming the right of possession, who are not made parties to the action, their tenants and agents, are not bound by the judgment and cannot be ousted under the writ. . . .

"While a judgment in an action of unlawful detainer is binding upon the parties thereto and their privies, privies are those who hold by, through, from, or under a party by some right acquired subsequent to the commencement of the suit. . . .

"If the plaintiff is in fact an employee of Magdalena Langen, acting for and on her behalf, and the alleged lease is a mere subterfuge, it would be the duty of the sheriff to eject the plaintiff from the premises as an employee. If the allegations contained in the complaint are true and the plaintiff is in fact a subtenant of Magdalena Langen, claiming under a lease executed prior to the commencement of this action, then the defendant *Borkowski*, plaintiff in the unlawful detainer action, cannot require the sheriff to eject him from the premises. . . .

"However, upon the undisputed facts appearing by the pleadings in this case Marie LaGrand had a right to terminate the tenancy upon the sale of the premises, and although the plaintiff here was not made a party defendant in the unlawful detainer action it appears that he wrongfully withholds the possession of the premises from *Borkowski*. As a subtenant or assignee of Magdalena Langen the plaintiff's rights cannot rise superior to hers. We see no ground upon which one so situated may properly invoke the jurisdiction of a court of equity to restrain the enforcement of a judgment. It comes under no head of equity jurisprudence to which we are cited. It would be a novel proposition indeed if a litigant could successfully invoke the jurisdiction of a court of equity in order to maintain himself in a position which he wrongfully occupies. Certainly it cannot be said that under the circumstances appearing in this case there was any abuse of judicial discretion in refusing to make the temporary injunction permanent and in dissolving the temporary injunction."

The present action having arisen and being based upon the proceedings in the Lancaster suit above referred to, and the facts as shown by the pleadings being closely allied and involved in the present action, this court is justified in considering the same, together with the decision in said last named case, in the instant case.    23 Corp. Jur. 114, and cases cited in note.

We will first take up the consideration of the alleged liability of the defendant *Halsey*.  The plaintiff was adjudged guilty of a civil contempt in failing and refusing to account for certain moneys claimed to have been collected and held by him in trust, and for refusing to pay the amount so collected to the clerk of the circuit court, to be held by the latter subject to the further order of the court.  It will also, at least impliedly, appear from the allegations of the complaint and from the pleadings as they are set forth in the Lancaster suit in the opinion of this court, that the moneys so ordered to be accounted for and paid consisted of rents which accrued from the tenancy of the property involved in the Lancaster suit during the pendency of the proceedings therein referred to.  While the exact nature of the sums so collected and held by the plaintiff does not definitely appear, nevertheless, in the absence of allegations to the contrary, it must be assumed that the moneys so collected and held had a direct or indirect bearing upon the issues involved in the Lancaster suit, and that it was the aim of the court to impound these moneys with the clerk of the court, to be by him held until the further order of the court, as a condition for the granting of any relief to the plaintiff in that suit, and that it was the view taken by the court that the retention of the moneys so referred to, by the plaintiff, had a tendency to defeat, impair, impede, or prejudice the rights of the parties in the Lancaster suit.

The Lancaster action was one in equity.  The complaint prayed for an injunction.  There was no prayer for the

recovery of money excepting in so far as such relief may be deemed to have been included in the general prayer, wherein the plaintiff asks for such other and further relief as to the court may appear just and equitable. But while the relief prayed for consisted of a restraining order enjoining the sheriff from evicting Lancaster and those holding under him from the premises involved, nevertheless a court of equity, in the exercise of the broad powers with which it is invested, could have granted any relief to the parties which the conscience of the chancellor might, under the facts and circumstances of that case, reasonably dictate. The granting or refusing of relief appealed to the exercise of the chancellor's discretion.

The plaintiff herein maintains that the circuit court had no jurisdiction whatsoever of the subject matter, claiming that the subject matter involved in the contempt proceedings was "money," and that he had obtained no jurisdiction of the plaintiff; that, having neither jurisdiction of the subject matter nor of the person, the alleged proceedings under which the plaintiff was found guilty of a civil contempt, and his commitment, were utterly void, and that the plaintiff, having suffered imprisonment by virtue of such alleged unlawful acts and proceedings, is entitled as a matter of law to recover damages.

Sec. 3477, Stats. 1923, relating to civil contempts, among other things provides:

"Every court of record and every judge of such court at his chambers shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty or any misconduct by which the rights or remedies of a party in an action or proceeding depending or triable in such court or before a court commissioner for the same county may be defeated, impaired, impeded or prejudiced in the following cases: . . .

"(3) Parties to actions, attorneys, counselors and all other persons for the nonpayment of any sum of money

ordered by such court to be paid in cases where by law executions cannot be awarded for the collection of such sum; and for any other disobedience to any lawful order, judgment or process of such court. And the powers of such court to punish, as in this chapter provided, for nonpayment of money may be exercised by the judge or judges thereof in vacation."

The circuit court is a court of general jurisdiction. In the performance of his duties the judge of such a court is constantly engaged in deciding the various issues presented upon a trial, questions of pleading and practice, the admissibility or non-admissibility of evidence, the decision of cases, the nature and extent of his jurisdiction, and the question of whether, in a given case or proceeding, he has jurisdiction either of the subject matter or of the person, or both. Where facts are present which have either legal value or color of legal value, he is immune from liability for error committed, even though it be subsequently held that as a matter of law he had no jurisdiction whatsoever of the matter. He is liable only where there is clearly an utter lack of jurisdiction and where the facts presented have no legal value or color of legal value. Such must be the law and is the law, and were it otherwise a judge of a court of general jurisdiction would be subject to an infinite number of harassing and troublesome suits which would have a tendency to frustrate the very objects and purposes for which courts of justice are established, namely, the fearless administration of the law. That such is the law of this state is demonstrated in the opinion in the case of *Robertson v. Parker,* 99 Wis. 652, 657, 75 N. W. 423, where the court approves of the following portion of the opinion in *Grove v. Van Dyn,* 44 N. J. L. 654, wherein it is said:

"Where the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable,

in a suit, to the person affected by his decision, whether such decision be right or wrong. *But when no facts are present, or only such facts as have neither legal value nor color of legal value in the affair, then, in that event, for the magistrate to take jurisdiction is not, in any manner, the performance of a judicial act, but simply the commission of an unofficial wrong.* This criterion seems a reasonable one. It protects a judge against the consequences of every error of judgment, but it leaves him answerable for the commission of wrong that is practically wilful. Such protection is necessary to the independence and usefulness of the judicial officer, and such responsibility is important to guard the citizen against official oppression."

Such is also substantially the holding of the supreme court of the United States in *Bradley v. Fisher,* 13 Wall. 335. In 11 Ruling Case Law, title "False Imprisonment," § 26, it is said:

"In many of the cases, as is shown by the next succeeding paragraph, this immunity has been confined to judges of courts of general jurisdiction as distinguished from those whose jurisdiction is special or limited. *Even the judge of a court of general jurisdiction would not be protected if he should act wholly without his jurisdiction, that is, should issue process without color of legal authority, and of a kind which no state of facts would justify. But if he has jurisdiction to issue process of the kind in question, and if the facts and papers on which he acts are such as to make it a matter for his judicial decision whether he should or should not issue the process in the particular case, he is not personally liable for any imprisonment which may result from his decision, though it is afterward held to be erroneous, and even though the error may be held to be one of jurisdiction.* Indeed, it is inaccurate to say in such a case that the court was without jurisdiction. When it has jurisdiction of *a certain class of cases,* and the judicial duty of passing on the papers and the evidence in a particular case to decide whether its judicial power shall be exerted, any error in the decision is an error in the exercise of jurisdiction rather than an act outside of jurisdiction. And this protection is made complete by the rule that a case is not

made out against him even by the allegation that he acted corruptly or maliciously."

By sec. 8 of art. VII of the constitution the circuit court is vested with the broad powers of a court of original general jurisdiction, which includes actions both civil and criminal. Conflicts in courts of general jurisdiction constantly arise, and many of the questions presented upon that subject are extremely close, in what are known as border-line cases. Among such cases are those which involve the jurisdiction of the state and the federal courts. These questions of jurisdiction are oftentimes raised by the ablest legal talent in the country, and are argued with a degree of persuasiveness that oftentimes baffles the keenest minds of the judges. Judges, after all, are human agencies and human beings, and however great may be their learning, their industry, and their zeal to ascertain and determine the truth, their logic and the conclusions derived therefrom are not always sound, as is made manifest from a casual inspection of the reports of the numerous cases reported by the tribunals of last resort; and many cases that have been closely scrutinized and determined by courts of original jurisdiction are still subject to the erroneous judgment of the judges of appellate courts. The standard of supreme wisdom is possessed only by a superhuman power. It is for these reasons that the principles enunciated in the *Robertson Case,* the *Bradley Case,* and those cited and set forth in Ruling Case Law above referred to, have become a rule based upon public policy. It would be difficult, indeed, to secure responsible, able, fearless, and courageous judges if this were not the law, and these principles have been adopted and adhered to from the dawn of the judicial history of the common law, and they are in accordance with the overwhelming weight of decisions, not only in this country but in every civilized country of the world.

Ch. 295 of the Statutes of Wisconsin for the year 1923, which statutes were in force when the issues herein treated

arose, treats of contempt in civil actions. Under sub. (3) of sec. 3477 the circuit court has power to punish for contempt by fine and imprisonment, or either, "parties to actions, attorneys, counselors *and all other persons* for the nonpayment of any sum of money ordered by such court to be paid in cases where by law executions cannot be awarded for the collection of such sum." Sec. 3477 also provides that "Every court of record . . . shall have power to punish . . . any neglect or violation of duty or any misconduct by which the rights or remedies of a party in an action or proceeding depending or triable in such court . . . may be defeated, impaired, impeded or prejudiced." Until the contrary appears, it must be presumed that the court acted within the limits of its jurisdiction.

It also appears from the records of the cases involved herein that on the 23d day of May, when the plaintiff was called upon the stand as a witness in the trial of the Lancaster action, the plaintiff was in possession of moneys belonging to the parties to the action which he had failed and neglected to make proper disposition of, and which retention of moneys had a tendency to defeat, impair, impede, or prejudice the rights of the parties in that action. Sitting as a court of equity, Judge HALSEY had the power not only to impose proper conditions as a basis for the granting of a temporary or permanent restraining order, but he had the right to punish not only parties to actions, attorneys, and counselors, but *all other persons* for the nonpayment of any sum of money, etc. By the term "all other persons," witnesses in actions are clearly included. The facts so appearing constituted the basis of his jurisdiction to act, and upon these facts it appears clearly that the court issued its order to show cause, returnable on the 25th day of May, and upon the return day of the order to show cause the plaintiff in this action appeared specially and made and filed his special plea. There was then presented to the court a clean-cut issue as to whether, under the facts and circum-

stances of the case as they had then developed, the court had
jurisdiction of the subject matter and of the person.   Under
the statutory provisions it must be conceded that he had ju-
risdiction of the subject of contempt; that he had jurisdiction
of the subject of money; and, whether or not he acquired
jurisdiction of the person of the plaintiff in this action, the
subject was one which was clearly debatable; and whether
the proceedings were proper, or, even though it be admitted
that as a matter of law he did not have jurisdiction of the
person of *Langen,* the issue involved was squarely raised,
and no logic resorted to by plaintiff's counsel in this action
can be persuasive that "no facts were present, or such facts
which have neither legal value nor color of legal value in the
affair."

It may even be conceded, for the purposes of this opinion,
that the interpleading of *Langen* as a party to the action
would have been the more logical and advisable course to
pursue.   We may also entertain a doubt as to whether the
proceeding by order to show cause, as a matter of law gave
the court jurisdiction of the person of *Langen* for the pur-
pose of contempt proceedings, which questions we do not
deem it necessary to determine.   The one important and all-
controlling factor, however, *does appear,* and that is that a
judicial question was fairly and squarely raised which called
upon the court for a decision, and, being a judicial question
based upon actual facts, or, to say the least, colorable facts,
the judge became invulnerable from the standpoint of liabil-
ity for his determination.   Nor is our conclusion in the least
affected by the allegations in the complaint that the judge
acted wilfully and with intent to injure the plaintiff in this
action.   *Robertson v. Parker,* 99 Wis. 652, 657, 75 N. W.
423; *Bradley v. Fisher,* 13 Wall. 335, 20 Lawy. Ed. 646;
25 Corp. Jur. 517, 518.

In *Robertson v. Parker, supra,* it was held: "Judges of
courts of superior or general jurisdiction possess such im-

munity, even when it is alleged that they had acted wilfully or corruptly." In *Bradley v. Fisher, supra,* it was held:

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly, and . . . the allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into, judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must in such cases resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed."

It is further argued by plaintiff's counsel that under the provisions of sec. 3479, Stats., it became necessary to make a personal demand of the plaintiff herein for the payment of the money referred to, and that failure to comply with such demand must be shown by affidavit. It is clear to us that a failure to make such demand or to make and file such an affidavit constitutes nothing more than an irregularity or error. However, we are satisfied that the order to show cause, which was personally served upon the plaintiff in this action and which the plaintiff failed and neglected to comply with, fully served the purpose of the personal demand. See sec. 3418, Stats. The order of commitment provided for his detention in the house of correction for a period of ninety days or until such time as he shall comply with the terms of the order. He was therefore given at all times the opportunity to be released from imprisonment by complying with the order; in other words, he held the key in his own hands which affected his destiny.

Other errors on this branch of the case are raised by counsel for the plaintiff, but in view of what has heretofore been said on the subject of jurisdiction of the subject matter and of the person an extended treatment of such matters in this opinion is deemed unnecessary, for, at the most, they could constitute nothing more than mere irregularities. Among such alleged irregularities is the claim that the plaintiff should have been committed to the county jail, where jail liberties could have been allowed, as provided for by secs. 4321 and 4322, Stats. Sec. 3479, which is included in ch. 295, entitled "Contempts in Civil Actions," provides:

"When any order of the court . . . shall have been made requiring the payment of costs or any other sum of money and proof by affidavit shall be made of the personal demand of such sum of money and of a refusal to pay it the court or judge may issue a warrant to commit the person so disobeying to prison or a *house of correction* until such sum and costs and expenses of the proceeding shall be paid. . . ."

Assuming, therefore, that there is a conflict between secs. 4321 and 4322 and sec. 3479, the decision of the matter rested with the court, and presented a judicial question for which the court, in committing error, is immune from liability. Furthermore, there is no allegation in the complaint to the effect that the plaintiff at any time availed himself of any privilege which he might have to jail liberties.

We will now consider the allegations in the complaint as to the liability of the sheriff, *Westfahl,* and the inspector of the house of correction, *Momsen.* In this behalf it is alleged, among other things, that the warrant of commitment was not regular upon its face, in that it was directed to the sheriff and not to the inspector of the house of correction; and it is argued that the inspector of the house of correction under this warrant had no authority to receive, detain, or imprison the plaintiff herein, and that his receipt, detention, and imprisonment of the plaintiff makes him

liable in damages. The warrant of commitment contains
the following direction: "The State of Wisconsin to the
Sheriff of Milwaukee County, Wisconsin, Greeting: . . ."
Counsel for the defendants *Westfahl* and *Momsen* argue that
this point was not raised or presented to the lower court
and therefore should not be considered on this appeal, under
the authority of *State ex rel. Houghton v. Phelps,* 171 Wis.
13, 176 N. W. 217. It has nowhere been held that the
failure to raise a point in the trial below absolutely deprives
this court from considering the same upon an appeal in
this court. The court has merely laid down a rule of prac-
tice, and in *Cappon v. O'Day,* 165 Wis. 486, 162 N. W.
655, it was held that "This court undoubtedly has the power
to review such a question, but whether it should do so or not
depends upon the facts and circumstances of the particular
case." Par. 2 of syllabus. But we are satisfied that the
argument of plaintiff's counsel has no merit. The warrant
was directed to the proper officer, namely, the sheriff. Under
this warrant the sheriff was directed to commit the plaintiff
to the house of correction. Under the provisions of ch. 56
of the Statutes the inspector of the house of correction is
made the custodian of all prisoners detained by him, so
that when the warrant was directed to the sheriff, and when
the sheriff, pursuant to the order of commitment, delivered
the prisoner to the house of correction, he was left in charge
of the officer who, under the law, had the legal custody of
the prisoner. So that there was no irregularity in failing
to name the inspector in the warrant of commitment, his
obligation and duty depending entirely upon the statutes.
It is our view that sec. 56.18 of the Statutes, directing that
all warrants of commitment shall be issued and directed to
the inspector of the house of correction, is merely directory,
and not mandatory. The warrant, being regular on its
face, fully protects both the sheriff and the inspector, as
is shown by the numerous authorities cited in the brief of
defendants' counsel, among which will be found *Gaertner*

*v. Bues,* 109 Wis. 165, 85 N. W. 388; *Holz v. Rediske,* 116 Wis. 353, 92 N. W. 1105; 24 Ruling Case Law, title "Sheriffs," § 84; 25 Corp. Jur. 477–479; notes in 51 L. R. A. 193–225, and 42 L. R. A. n. s. 69–79.

Having decided that there is no liability against the defendant *Halsey* and that the warrant of commitment is regular on its face, it follows that the defendant *Maas,* the clerk of courts, is also immune from liability.  The duties of the clerk of the courts are clearly defined by statute, and, as is said in the brief of respondents, "he is liable only if he does not exercise proper care and diligence in the performance of his duties."  The clerk acts merely as an amanuensis of the court.  11 Corp. Jur. 886, 887; and on pages 894 and 895 of 11 Corp. Jur. it is said:

"In matters which the clerk is required to submit to the judge for approval, it will be presumed that they were done under the sanction and direction of the judge; and in such case the clerk is responsible only where he refuses to discharge his duty, when requested by the judge, or where he is guilty of fraud in collusion with the judge.  Such duties are not governed by the same principles that regulate the duties which he is required to perform independent of and without regard to the dictation of any superior."

We come now to the alleged liability of the defendants *Otto G. Hackbarth* and *Frank Borkowski.*  As to the defendant *Hackbarth* it is alleged in the complaint that "he acted as one of the attorneys and as specially directing counsel for said *Frank Borkowski* in said case of Lancaster v. Borkowski and McManus as sheriff, and counseled and instigated the court to pursue the unlawful proceedings and to make the unlawful orders in said action that culminated in the said imprisonment of the plaintiff;" also that Friedrich & Hackbarth, a firm of attorneys of which the defendant *Hackbarth* is a member, subscribed or indorsed the writ of commitment.

An attorney at law is an officer of the court. The nature of his obligations is both public and private. His public duty consists in his obligation to aid the administration of justice; his private duty, to faithfully, honestly, and conscientiously represent the interests of his client. In every case that comes to him in his professional capacity he must determine wherein lies his obligations to the public and his obligations to his client, and to discharge this duty properly requires the exercise of a keen discrimination; and wherever the duties to his client conflict with those he owes to the public as an officer of the court in the administration of justice, the former must yield to the latter. He therefore occupies what may be termed a *quasi*-judicial office. The office of an attorney is one which is inherent in our judicial system, and it is not created under our state or federal constitution, but came to us at the time of the adoption of the constitution as a part of the judicial system then existing. Under his oath, as provided by sec. 2586*a*, Stats. 1923, he must solemnly swear that he will support the constitution of the United States and of the state of Wisconsin (an oath generally required from officers) ; that he will maintain the respect due to courts of justice and judicial officers; that he will not consent [counsel] or maintain any suit or proceeding which shall appear to him to be unjust, or any defense except such as he believes to be honestly debatable under the law of the land. In order to maintain the respect due to courts of justice and judicial officers, he cannot commence or prosecute an action or proceeding which shall be unjust; and right here in this respect he is called upon to exercise his judgment in a manner like that exercised by a judicial officer. Under this oath, we take it that where an attorney in bad faith urges upon the court the adoption of a legal proposition which is not honestly debatable, with a view of furthering the interests of his client, he is not aiding but thwarting the administration of justice; and we take

it further, that the provision of the oath which pertains to a defense of an action or proceeding, and requires the attorney to only defend upon such legal grounds as are honestly debatable under the law of the land, applies with equal force to the prosecution of an action or a proceeding.

There is no reason, therefore, that we can perceive why an attorney at law, in the discharge of his professional duties, should not, to a large degree at least, be immune from liability in the same manner as it is herein held with respect to judicial officers. It is only since the adoption of the oath above referred to, in the statutes, upon recommendation of the American Bar Association, that the real nature of the obligations of an attorney, both to the public and to his clients, has come prominently to the foreground and has been recognized; and it can be truthfully said that no legislative enactment upon the subject has had a more beneficent and widespread influence in raising the ethical standard of the profession, whether viewed from the standpoint of the bar or that of the public. It is the opinion of the writer that many of the extreme cases found in the books where attorneys have been held liable for damages in false imprisonment cases, resulted from the now rather antiquated view of an attorney's duties and obligations.

What has heretofore been held with respect to the alleged liability of Judge HALSEY, on the alleged lack of jurisdiction, is also largely applicable to the liability of the attorney. If the issue of liability is one which is fairly debatable, then under the oath of office of an attorney he is not only authorized to present and urge his position upon the court, but in the discharge of his duties towards his client he must do so; and if it subsequently is determined that the position taken by him was erroneous, he should be relieved from responsibility. He is in duty bound, however, under his oath, to exercise good faith. He must not be guilty of any fraudulent acts, and he must be free from any unlawful

conspiracy with either his client, the judge, or any other person, which might have a tendency to either frustrate the administration of justice or to obtain for his client something to which he is not justly and fairly entitled.

With these thoughts in mind, the defendant *Hackbarth* was justified in acting as one of the attorneys for his client, as a specially directing counsel in the Lancaster suit, and also in instigating and counseling the court to pursue the proceedings which resulted in the writ of commitment and the imprisonment of the plaintiff; nor does the fact that his firm subscribed and indorsed the writ of commitment in the least have any effect upon the subject of his liability. It is in the interests of the proper administration of justice that counsel shall be courageous and fearless in the discharge of their duties; and, in fact, fearlessness and courage are among the principal elements that lead to professional success. As we cannot have a strong court without courageous and fearless judges, so it is impossible to have a strong bar without courageous and fearless attorneys. Both operate together in a common cause, as parts and parcels of the judicial system, to bring about the best results. A client would rapidly lose faith in his lawyer if he shrank from assuming a legal attitude on any question which is fairly debatable and which might have a tendency to bring about a successful result of the cause. This is the substantial conclusion arrived at in the case of *Fischer v. Langbein,* 103 N. Y. 84, 8 N. E. 251, and this conclusion was arrived at after a careful review of numerous cases, both American and English.

The legal principles herein involved are also aptly stated in 11 Ruling Case Law, 809, where, among other things, it is said:

"If he [meaning the attorney] has done no more than urge on the court properly and in good faith the claims of his client, or a view of the law favorable to his client, he

does not become personally liable because the decision of the court thereon may subsequently be held to have been erroneous."

In respect to the liability of the defendant *Frank Borkowski,* it is alleged that he is the person, "and at whose request, or upon whose behalf, the above alleged unlawful proceedings were prosecuted, and because of which proceedings and in the same this plaintiff was imprisoned in the house of correction of Milwaukee county, as hereinabove set forth." *Borkowski* prosecuted the unlawful detainer suit in the civil court, and was successful. While it was held by this court in the Lancaster suit that inasmuch as Lancaster was not a privy, and not having been made a party to such unlawful detainer suit, he could not be evicted from the premises by virtue of the writ of restitution, however, it was expressly held by this court that Lancaster's possession was unlawful, and that by reason of that fact a court of equity should not grant him any relief. In the Lancaster suit *Borkowski* was made a party defendant. Rents properly belonging to him had been collected and were held by *Langen,* and in the course of the trial the court ordered *Langen* to account for these moneys and to pay them into court. While the plaintiff alleges that *Borkowski's* directing counsel (the defendant *Hackbarth*) instigated the proceedings which resulted in the writ of contempt and of commitment, it does not appear that the defendant *Borkowski* did anything further than to sit quietly by and to permit his counsel and the court to protect his interests, whatever they might be.

In speaking of one situated like *Borkowski,* it is said in 11 Ruling Case Law, 808:

"Since such person is usually a layman not familiar with, and not pretending to determine, the legal procedure to be taken, it has been said to be unjust to hold him guilty of any tort, if he merely makes to a magistrate an honest statement of the facts as he claims them to be and leaves it to the officers of the law to take such action as they deem proper;

and under such circumstances many courts have held him not liable."

Under note 5, a large number of cases will be found supporting this proposition. See, also *Gelzenleuchter v. Niemeyer,* 64 Wis. 316, 25 N. W. 442.

We therefore hold that the orders appealed from, sustaining the demurrers, must be affirmed.

*By the Court.*—Orders affirmed.