Patti H. STRID, Plaintiff-Appellant,

**v.**

Attorney Edward E. CONVERSE, Defendant-Respondent.

Supreme Court

*No. 82–018. Argued March 1, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 350.)

For the plaintiff-appellant there were briefs and oral argument by *James R. Long,* Appleton.

For the defendant-respondent there was a brief and oral argument by *Stephen J. Everson,* Green Bay.

BEILFUSS, C. J. This is an appeal from an order of the trial court dismissing the plaintiff's complaint for failure to state a claim. We accepted the case upon certification from the court of appeals.

The plaintiff, Patti Strid, and her husband, Dean Strid, were divorced in 1977. Pursuant to the divorce judgment custody of the minor children was awarded to Patti Strid, and Dean Strid was afforded visitation on weekends and alternate holidays.

In March of 1979, Mrs. Strid signed a petition alleging that her husband abused his visitation rights by consuming alcoholic beverages and requested that his visitation rights be suspended.[1] This petition was scheduled for an Order to Show Cause hearing on April 20, 1979, by Judge Thomas W. Grover. The Order to Show Cause was served on Mr. Strid and forwarded to his attorney, Edward Converse, the defendant in this action. Because Converse was going to be out of town on that date he requested an adjourned hearing date. Judge James W. Byers replaced Judge Grover and set August 13, 1979, as the new hearing date, but again Converse requested an alternate date. Judge Byers then set the hearing for October 30, 1979.

Mrs. Strid would not allow Mr. Strid to exercise his visitation rights beginning in September of 1979. On October 9, 1979, Judge Byers entered an *ex parte* order ordering Mrs. Strid to allow Mr. Strid to visit the parties' minor children pursuant to the terms of the divorce judgment and subsequent court orders. This order further provided that a bench warrant would issue in the event Mrs. Strid refused to allow visitation. The order was based on the affidavit of Mr. Strid which stated that Mrs. Strid was wilfully refusing visitation in violation of the divorce judgment. On October 22, 1979, Judge Byers issued an Order to Show Cause ordering Mrs. Strid to demonstrate why she should not be found in contempt for failure to allow the ordered visitation.

---

[1] The petition also alleged that he failed to pay child support and failed to perform other elements of the divorce judgment dealing mainly with the property settlement provisions.

The hearing on this Order to Show Cause was set for the same time as the hearing on the Order to Show Cause on Mrs. Strid's petition to suspend Mr. Strid's visitation.

Attorney Converse then wrote Mrs. Strid's attorney and informed him that Judge Byers had cancelled the October 30th hearing and that the judge would set up a conference call in the near future to reschedule the matter. On November 2, 1979, Converse prepared a bench warrant directing the sheriff to arrest Mrs. Strid for failure to obey the court's *ex parte* order ordering visitation. The warrant was signed by Converse and issued by Judge Byers. On November 5, 1979, the plaintiff was arrested, booked and held until she appeared without counsel before Judge Byers on the same day.

At the hearing on the bench warrant Judge Byers rescheduled the hearing date on the issue of visitation for November 21, 1979.[2] Mr. Strid had obtained custody of the children following Mrs. Strid's arrest, and the court ordered that the children were to remain in their father's custody until the next day. He further ordered Mrs. Strid to allow Mr. Strid weekend visitation pursuant to the divorce judgment and subsequent court orders until the full hearing on visitation rights was held. Judge Byers stayed the bench warrant and released Mrs. Strid, but stated that it would be reinstated if she failed to permit visitation.

In July of 1980, Mrs. Strid commenced this action against Attorney Converse for malicious prosecution and false imprisonment.[3] The trial court dismissed the complaint, concluding that it failed to state a claim upon

---

[2] The record is unclear as to the date this hearing was actually held and the final disposition made by the trial court on the issue of visitation. However, this hearing and its disposition are irrelevant to the issues before this court on review.

[3] The plaintiff on appeal no longer relies on the false imprisonment claim.

which relief could be granted. It held that in order to state a claim for malicious prosecution the former proceedings must have been initiated by the defendant in the malicious prosecution action. The court found that Converse's client, not Converse, initiated the former proceedings. Mrs. Strid appealed contending that the complaint stated a claim for malicious prosecution and abuse of process. We accepted the appeal on certification from the court of appeals.

The issue on appeal is whether the complaint states a claim upon which relief can be granted. In determining whether the complaint was properly dismissed for failure to state a claim, we apply the familiar test that the pleadings are to be liberally construed to do substantial justice between the parties, and the complaint should be dismissed as legally insufficient only if it appears to a certainty that no relief can be granted under any set of facts that the plaintiff can prove in support of her allegations. *La Fleur v. Mosher,* 109 Wis. 2d 113, 121, 325 N.W.2d 314 (1982).

On appeal the plaintiff contends that the complaint states a claim for malicious prosecution and abuse of process. The defendant contends that because the words "abuse of process" do not appear in the complaint and the plaintiff indicated in the trial court that she was proceeding under the theory of malicious prosecution, she can not on appeal assert that the complaint also states a claim for abuse of process. This contention is incorrect.

A plaintiff is not required to put labels on the allegations in the complaint in order to state a valid claim. It is the sufficiency of the facts alleged that control the determination of whether a claim for relief is properly

plead. As stated in *Jost v. Dairyland Power Cooperative,*
45 Wis. 2d 164, 169–70, 172 N.W.2d 647 (1969) :

"We do not agree—a cause of action is not constituted
by labeling the operative facts with the name of a legal
theory. The operative facts themselves, if they show the
invasion of a protected right, constitute the cause of ac-
tion. What they are called is immaterial. If the facts
reveal an apparent right to recover under any legal
theory, they are sufficient as a cause of action—and
there is no violation of the rules of pleading if the facts
lead to the defendant's liability on more than one legal
theory."

Thus if the facts alleged state a claim for abuse of
process alternatively or in addition to malicious prosecu-
tion, the complaint should not be dismissed even though
the theory was not explicitly argued in the trial court.

We first examine the complaint to determine if it
states a claim for malicious prosecution. The six essen-
tial elements of a claim for malicious prosecution are:

" '1. There must have been a prior institution or con-
tinuation of some regular judicial proceedings against
the plaintiff in this action for malicious prosecution.

" '2. Such former proceedings must have been by, or
at the instance of, the defendant in this action for mali-
cious prosecution.

" '3. The former proceedings must have terminated in
favor of the defendant therein, the plaintiff in the action
for malicious prosecution.

" '4. There must have been malice in instituting the
former proceedings.

" '5. There must have been want of probable cause
for the institution of the former proceedings.

" '6. There must have been injury or damage resulting
to the plaintiff from the former proceedings.' " *Maniaci
v. Marquette University,* 50 Wis. 2d 287, 297–98, 184
N.W.2d 168 (1971) ; *Elmer v. Chicago & N.W. Ry. Co.,*
257 Wis. 228, 231, 43 N.W.2d 244 (1950).

These elements apply to the unjustifiable institution of civil judicial proceedings as well as to the institution of criminal proceedings. *Maniaci,* 50 Wis. 2d at 298. All six elements must be present in order to state a valid claim for malicious prosecution, and the absence of any one element is fatal to the claim. *Yelk v. Seefeldt,* 35 Wis. 2d 271, 277, 151 N.W.2d 4 (1967). Thus, if we find one element lacking we do not need to examine the other elements.

An examination of the complaint leads to the conclusion that it fails to allege the third element of a claim for malicious prosecution—that the complained of proceedings terminated in favor of the defendant, who then became the plaintiff in the subsequent malicious prosecution action. The proceedings complained of by the plaintiff in this action are the issuance of the bench warrant and her subsequent arrest and appearance before Judge Byers pursuant to this warrant. The complaint merely alleges that Mrs. Strid was arrested and brought without counsel before Judge Byers as a result of this bench warrant. The complaint does not allege either that Judge Byers determined that the bench warrant was improperly issued or that he ruled in her favor on the subject of the bench warrant—Mrs. Strid's continued violation of his *ex parte* order requiring her to comply with the visitation requirements of the divorce judgment and subsequent court orders. Either of these two alternatives would have been a termination in Mrs. Strid's favor in the complained of proceeding.

In addition to her failure to allege facts meeting this third element, the record before us demonstrates that Mrs. Strid can not so allege.[4] The transcript of the hear-

---

[4] Although this appeal is before the court from an order dismissing the complaint for failure to state a claim, the record reveals that the defendant filed an answer in addition to his motion to dismiss. Further, defendant's motion to dismiss was

ing held on the issuance of the bench warrant shows that the trial court deemed the issuance of the bench warrant to be proper. Although the legality of the bench warrant was not specifically litigated at the hearing, the court stayed the enforcement of the warrant, stating that it would be reinstated if Mrs. Strid continued to refuse visitation in violation of the court's order. We believe that this indicates at least an implicit, if not express, recognition of the validity of the bench warrant.[5]

Further, at the hearing the trial court ordered Mrs. Strid to allow Mr. Strid weekend visitation, as required under the terms of the divorce judgment and subsequent court orders, pending the full hearing on the visitation issues raised by both parties. Mr. Strid's present visitation rights, pending a full hearing on a change in these rights, was the sole purpose of the bench warrant. Thus, the court clearly terminated the bench warrant proceedings in Mr. Strid's favor and against Mrs. Strid, the malicious prosecution plaintiff.

Mrs. Strid contends that the third element is met because the visitation ordered at the bench warrant hearing was temporary in nature and Mrs. Strid ultimately prevailed in her demand to suspend Mr. Strid's visitation. This contention misconstrues the nature of the

supported by documents in addition to the pleadings. Thus, the motion to dismiss could have been treated as a motion for summary judgment pursuant to sec. 802.06(2), Stats.

[5] While we have some doubt as to the actual validity of the issuance of the bench warrant under the circumstances in this case, we do not specifically address the issue because it is the termination in the trial court that controls for purposes of determining whether the third element has been met. We also recognize that the validity of the bench warrant bears on the issue of the existence of probable cause. However, because we find that the third element is absent, we do not reach the issue of the presence of the fifth element.

proof required to meet the element that the complained of proceedings terminated in favor of the malicious prosecution plaintiff. This element focuses on the relief sought by the malicious prosecution defendant in the complained of proceeding. The bench warrant was issued in order to require Mrs. Strid to comply with existing visitation orders pending a full hearing. The full hearing on visitation was a separate proceeding and thus its ultimate resolution is irrelevant to the bench warrant proceedings which are the only subject of this action. Therefore, because the plaintiff did not, and can not, allege facts supporting the third element of malicious prosecution, we conclude that she has failed to state a claim for malicious prosecution.

We next examine the complaint to determine if Mrs. Strid has stated a claim for abuse of process. In *Maniaci v. Marquette University,* 50 Wis. 2d at 299, we adopted the following definition of "abuse of process":

" 'One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.' "

The court in *Maniaci* went on to note that abuse of process is broader than malicious prosecution and may provide a remedy where malicious prosecution will not. Malice, want of probable cause, and termination in the plaintiff's favor are not required. Rather, as stated by the court in *Maniaci:*

"Abuse of process lies even in those instances where:
" '. . . legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'
"The gist of the tort is:

" '. . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used . . . is the only thing of importance.' Prosser, *supra,* p. 876, sec. 115." *Id.* at 299–300.

In *Thompson v. Beecham,* 72 Wis. 2d 356, 362, 241 N.W.2d 163 (1976), this court stated that the two elements of the tort are: (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process. As stated by the court in *Thompson:*

"In order to maintain an action for abuse of process, the process must be used for something more than a proper use with a bad motive. The plaintiff must allege and prove that something was done under the process which was not warranted by its terms. The existence of an improper purpose alone is not enough, for this improper purpose must also culminate in an actual misuse of the process to obtain some ulterior advantage." *Id.* at 363.

Our examination of the complaint leads us to the conclusion that the plaintiff has stated a claim—although skeletal—for abuse of process. The complaint alleges that both Mr. and Mrs. Strid were awaiting a joint hearing on the issue of visitation when Mr. Converse prepared the bench warrant which caused Mrs. Strid's arrest. Although not specifically alleged, we agree with the plaintiff that from the facts pleaded in the complaint, a reasonable inference can be drawn that the process was misused to "coerce the plaintiff into granting visitation, to provide his client with quick access to the children, and to have a tactical advantage over Patti Strid in that she was unable to appear with counsel." Such an inference is further supported by the evidence in the record that at the time of the hearing on the bench warrant

Mr. Strid already had the children in his custody, although it was not a regular visitation day.

Such purposes, if proved at trial, are clearly ulterior and the use of the bench warrant to obtain these goals is "misuse of the process to obtain some ulterior advantage." *Thompson,* 72 Wis. 2d at 363. Thus both elements of the tort of abuse of process are alleged and the plaintiff has stated a claim for abuse of process.

The final issue we must address is whether the plaintiff's claim for abuse of process fails because the defendant was acting in his professional capacity as an attorney and is therefore entitled to immunity. In *Langen v. Borkowski,* 188 Wis. 277, 206 N.W. 181 (1925), this court examined the question of an attorney's immunity from liability to third parties for actions taken on behalf of his or her client. The court began with an analysis of the attorney's private and public duties, stating:

"An attorney at law is an officer of the court. The nature of his obligations is both public and private. His public duty consists in his obligation to aid the administration of justice; his private duty, to faithfully, honestly, and conscientiously represent the interests of his client. In every case that comes to him in his professional capacity he must determine wherein lies his obligations to the public and his obligations to his client, and to discharge this duty properly requires the exercise of a keen discrimination; and wherever the duties to his client conflict with those he owes to the public as an officer of the court in the administration of justice, the former must yield to the latter. He therefore occupies what may be termed a *quasi*-judicial office." *Id.* at 301.

Based on the quasi-judicial character of an attorney's duties, the court concluded that an attorney is "to a large degree" immune from liability for acts performed in the discharge of his or her professional duties. *Id.* at 302.

The extent of this immunity was described by the court as follows:

"If the issue of liability is one which is fairly debatable, then under the oath of office of an attorney he is not only authorized to present and urge his position upon the court, but in the discharge of his duties towards his client he must do so; and if it subsequently is determined that the position taken by him was erroneous, he should be relieved from responsibility. He is in duty bound, however, under his oath, to exercise good faith. He must not be guilty of any fraudulent acts, and he must be free from any unlawful conspiracy with either his client, the judge, or any other person, which might have a tendency to either frustrate the administration of justice or to obtain for his client something to which he is not justly and fairly entitled." *Id.* at 302–03.

More recently this court stated its adherence to the following rule:

" 'While an attorney is not liable to a third person for acts performed in good faith, and mere negligence on the part of an attorney is insufficient to give a right of action to a third party injured thereby, an attorney is personally liable to a third party who sustains an injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act. . . .' " *Goerke v. Vojvodich,* 67 Wis. 2d 102, 105, 226 N.W.2d 211 (1975), quoting 7. C.J.S., *Attorney and Client,* p. 834, sec. 52b.

These cases demonstrate that the immunity of an attorney who is acting in a professional capacity is qualified rather than absolute. The immunity from liability to third parties extends to an attorney who pursues in good faith his or her client's interests on a matter fairly debatable in the law. However, the immunity does not apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration

of justice or to obtain something for the client to which the client is not justly entitled.[6]

The complaint alleges that the defendant acted maliciously and vindictively in preparing the warrant and causing the arrest of the plaintiff. The facts alleged demonstrate that the attorney caused the plaintiff to be arrested despite the fact that the plaintiff's actions which formed the basis for the warrant and the arrest, denial of Mr. Strid's visitation rights, had been set for a full hearing. The defendant denies that he acted with malice or vindictiveness and states that he was acting in the good faith pursuit of his client's interests.

We believe that the facts alleged by the plaintiff raise the issue of whether the defendant acted in bad faith in causing the plaintiff's arrest and a jury question is created as to whether Mr. Converse was immune from liability.

We conclude that the plaintiff has stated a claim for abuse of process and alleged facts which bring the defendant outside the doctrine of immunity. She is therefore entitled to an opportunity to prove her allegations and the defendant is entitled to present his defense. We therefore reverse the trial court's order dismissing the complaint.

*By the Court.*—The order is reversed and cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

---

[6] This general rule of immunity is also subject to other exceptions, *see, Auric v. Continental Casualty Co.*, 111 Wis. 2d 507, 331 N.W.2d 325 (1983).