**Count FULLER a/k/a Jeffrey Pergoli, Plaintiff,**

v.

**The FULLER BRUSH COMPANY, Defendant.**

**Civ. A. No. 83–C–592.**

United States District Court, E.D. Wisconsin.

Oct. 20, 1984.

created by the lacuna of specific authorities at the highest level of the state judicial system.

Count Fuller, pro se.

Truman Q. McNulty, Mulcahy & Wherry, S.C., Milwaukee, Wis., Allen H. Gerstein, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., for defendant.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

### IN AN ORDERLY WORLD,

THERE'S ALWAYS A PLACE FOR THE DISORDERLY.

The brilliant epigrammatist[1] who penned the cartoon reprinted above probably does not know the plaintiff in this case. However, he fits the epigrammatist's description to a tee. Yes, this is a case about someone who is a bit disorderly, that is to say, a bit out of the ordinary. He marches to the beat of a different drummer. The bottom line result of the matter before me is that he may, until further notice, continue to do so.

"Count Fuller a/k/a Jeffrey Pergoli" filed this action in the Circuit Court for Milwaukee County alleging that the Fuller Brush Company committed the tort of malicious prosecution. He also sought a declaratory judgment as to the legality of his sale of household cleaning supplies in his own

---

1. He is Dr. Ashleigh Brilliant, the author of, among other books, "Appreciate me Now and avoid the rush."

name and the name "Count's House of Fuller."[2] The Fuller Brush Company removed the case to this court and filed a counterclaim alleging trademark infringement, unfair competition, interference with business relations, and unfair trade practices. The company has moved for summary judgment.

Count Fuller has alleged that on two occasions the Fuller Brush Company maliciously caused him to be prosecuted. The first was a criminal charge for the issuance of a worthless check brought in Barton County, Kansas. The second was a charge in Milwaukee County of unlawful home solicitation. The company claims that under Wisconsin law, at least as that law is applied to the facts of this case, Count Fuller cannot establish the prerequisites for a malicious prosecution suit.

In *Krieg v. Dayton-Hudson Corp.*, 104 Wis.2d 455, 460–461 (1981), 311 N.W.2d 641, the Wisconsin Supreme Court stated:

"The common law tort of malicious prosecution has not been favored by the courts, and in Wisconsin we have taken a restrictive position on this tort. While we want to afford a remedy to those who have been truly wronged, we must also deter frivolous or groundless litigation. In order to accomplish this, the tort of malicious prosecution is designed to place a stringent burden upon a plaintiff to meet the following elements:

"1. There must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosecution.

"2. Such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution.

"3. The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.

"4. There must have been malice in instituting the former proceedings.

"5. There must have been want of probable cause for the institution of the former proceedings, and

"6. There must have been injury or damage resulting to the plaintiff from the former proceedings."

In addition, the court stated in *Gladfelter v. Doemel*, 2 Wis.2d 635, 87 N.W.2d 490 (1958), that it is a defense to a charge of malicious prosecution if the suit is instituted on the advice of counsel or of a prosecuting attorney.

It is undisputed here that on July 16, 1980, Jeffrey Pergoli became a Fuller Brush dealer. As a dealer he agreed to pay for merchandise purchased from Fuller Brush within 14 days of shipment. On October 23, 1980, he sent Fuller Brush a personal check for $264.53 in payment for goods received. On December 5, 1980, he was informed that the check had been returned because of insufficient funds in his account. In January 1981, he was terminated as an authorized Fuller Brush dealer. Fuller Brush made a written demand for payment and inquired concerning the reasons for non-payment. It offered a payment plan on January 21, 1981. Count Fuller did not respond until April 2, 1981, when he promised to pay the amounts due.

On April 2, 1981, the Credit Manager of the Fuller Brush Company demanded payment of the overdue account and threatened prosecution in connection with the bad check. On September 30, 1981, criminal proceedings were instituted against Count Fuller in Kansas for the issuance of a worthless check. Because the action was filed by the prosecuting attorney in Kansas, no claim can lie here for malicious prosecution.

As to the unlawful home solicitation charge, the facts show that a customer, Eileen Ewig, paid Count Fuller for goods she had purchased with a check made out

**2.** In an affidavit filed by Count Fuller on February 21, 1984, he disclaims an interest in using the name "Count's House of Fuller." Thus, his declaratory judgment claim will be limited to his use of the name "Count Fuller."

to the Fuller Brush Company. After the products were delivered, Ewig noticed that they were not Fuller Brush products. She complained to the Shorewood Police Department. On November 17, 1981, a criminal complaint was filed against Count Fuller for violating the home solicitation statute. The charge was later dismissed on motion of the State. As to this charge, Count Fuller cannot establish that there was a lack of probable cause for the issuance of the charge. In addition, he does not allege that this charge was brought at the instance of the Fuller Brush Company. Thus, the claims of Count Fuller for malicious prosecution are dismissed.

The Fuller Brush Company has also requested dismissal of Count 2 of the Complaint, the declaratory judgment action, as well as judgment on its claims for trademark infringement, unfair competition, interference with the business relations, and unfair trade practices. These items are intertwined.

The undisputed facts show that on October 11, 1982, Jeffrey Pergoli legally changed his name to Count Copy-Fuller. This occurred almost two years after he was terminated as an authorized Fuller Brush dealer. As "Count Fuller" he has continued to perform as a colorful, some might say bizzare or outrageous, door-to-door salesman of household supplies. When he works he states that he shows potential customers a Fuller Brush product catalog with his own label attached. His label reads "Count (Red Heart) Fuller; the most famous door-to-door salesman in America is an independent marketer of Fuller Brush products and Superb Brush Company. He is not an employee or agent of the Fuller Brush Company[3]. All Fuller Brush products are resold only—to order call: Phone (414) 765–9215."

The Count wears wild costumes. At the court hearing on these motions he wore one of them, a bright green sportscoat and large dark glasses in the shape of butterflies. He had numerous small stuffed animals perched on his shoulders. As the sketch[4] made during the hearing shows (too bad it's not in color), the outfit borders on the outrageous. As the sketch also shows, the company's attorneys at the back table are not amused. Actually, the Count's former lawyer (he has been proceeding pro se lately) at the front table also does not appear to be too amused. In fact, the only happy face in the courtroom belongs to the Count's companion (perhaps "Countess" Fuller), who supported him from the front row during the hearing.

---

**3.** The disclaimer here is important. On this motion, the disclaimer, coupled with the Count's crazy persona, have tipped the scale in his favor. If the disclaimer were not used, the result of this motion could very well be different.

**4.** The sketch was made by my former law clerk, Richard J. Sankowitz, B.A., Marquette University, 1980; J.D., Harvard Law School, 1983. Although Mr. Sankovitz's talents as an artist are considerable, his skills as a lawyer are even more impressive.

Perhaps because it is not amused, the company claims that Count Fuller's activities must be stopped. The issue presented is to what extent Count Fuller's activities are legally impermissible either as unfair competition or because they infringe on the Fuller Brush trademark.

■ The "Fuller Brush Man" is a part of American lore. It is as if he exists in a Norman Rockwell painting, carrying samples of mops and bottles of cleaning solutions to the housewife, who answers the door while wiping her hands on her apron. Today, he is probably less folksy but no less respectable. To understate, Count Fuller does not fit the bill. In fact, the Count is so atypical that it is difficult to imagine why the Fuller Brush Company seems so threatened by his activities. I do not believe that any, or at least very many, could be deceived. Certainly, I cannot say as a matter of law that a significant likelihood of confusion exists.

Count Fuller states outright in his materials that he is not a Fuller Brush Man. Why would a reasonable person think that he was? Dom DeLuise can squirm into bikini Jockey underwear and say he's Jim Palmer without causing Palmer or Jockey

any anxiety. Exaggeration, hyperbole and parody have a place. It should not be the mission of the federal court to stomp them out. Because material facts exist and because I cannot say as a matter of law that confusion exists, I must deny the motion of the Fuller Brush Company for summary judgment.