Kim KAMINSKE, Plaintiff,

v.

WISCONSIN CENTRAL
LTD., Defendant.

No. 99–C–0297.

United States District Court,
E.D. Wisconsin.

July 3, 2000.

John C. Cabaniss, Milwaukee, WI, for Plaintiff.

James A. Fletcher, Chicago, IL, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

On March 4, 1996, a train owned by defendant Wisconsin Central Ltd. (WCL) derailed in Weyauwega, Wisconsin, causing damage to the property of plaintiff Kim Kaminske and his wife Laurie. Ultimately the Kaminskes and defendant settled the Kaminskes' claim for damages. Subsequent to the settlement a dispute arose between the Kaminskes and defendant, and defendant reported to the district attorney of Waupaca County that the Kaminskes had defrauded the railroad. This led the district attorney to obtain a search warrant for the Kaminskes' home and ultimately to charge the Kaminskes with theft by fraud. After a trial to the court, the judge found the Kaminskes not guilty.

Plaintiff now sues WCL alleging that WCL committed the torts of (1) malicious prosecution, (2) abuse of process, and (3) defamation.

## I. UNDISPUTED FACTS AND PROCEDURAL HISTORY

Unless otherwise noted, the following facts are undisputed and derive from the parties' submissions regarding defendant's proposed findings of fact under Local Rule § 6.05 (E.D.Wis.). Although plaintiff responded to defendant's proposed findings, he did not submit any of his own under Local Rule § 6.05(b)(2). His brief in opposition to defendant's motion for summary judgment, however, contains numerous references to other facts he deemed pertinent. While not required under the local rules to even consider such references because not addressed in any proposed findings, to the extent I believe relevant and possible I have nevertheless incorporated some of those factual assertions in making my decision. To the extent I have not referred to such facts in this section or in the discussion below, I did not deem them relevant or found them inadequately presented. See *Hunt–Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1010 n. 2 (7th Cir.1997) (stating that federal courts are not obliged to scour the record looking for factual disputes).

Plaintiff Kim Kaminske is a resident and citizen of the State of Wisconsin. WCL is a corporation incorporated under Illinois law with its principal place of business in Rosemont, Illinois. WCL is engaged in the business of providing interstate rail freight transportation service in the States of Wisconsin, Illinois, Michigan and Minnesota. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000. Venue over this case is proper in the Eastern District of Wisconsin in that the events giving rise to plaintiff's claims occurred in this district.

On March 4, 1996, a WCL train derailed in Weyauwega, Wisconsin. The derailment resulted in a fire involving tank cars carrying propane gas, forcing the evacuation of residents of Weyauwega, including the plaintiff and his wife Laurie.

Following the evacuation, WCL began negotiating settlements with Weyauwega residents in an effort to compensate them for costs and damages they had incurred as a result of the evacuation. Damages were sustained by Weyauwega residents, including among other things out of pocket expenses (for food and lodging for example) and the inconvenience of being away from their homes. There were, however, some residents who sustained damage to their homes and personal property, largely because of water pipes that had burst.

To assist in the settlement process, WCL retained Property Damage Appraisers (PDA). PDA was assigned to meet with Weyauwega residents who claimed damage to their homes and/or personal property. According to defendant, with respect to personal property PDA was to have the resident identify what items of property the resident claimed to have been damaged and to determine the cost of replacing those items. (DFOF[1] ¶ 12.) According to plaintiff, however, WCL hired PDA to act as its agent in providing estimates of personal property damage. (PFOF at 2.)

In September 1996 plaintiff and his wife met with representatives of WCL on two occasions to negotiate a settlement of their claim: (1) on September 16, 1996 they met with Jeff Weliky, a WCL claims manager; and (2) on September 25, 1996 they met with Cecil Wingo, an employee of a contractor WCL had retained to assist it in the settlement process. Between the end of the evacuation and these two meetings, PDA representatives had been to the home of plaintiff and his wife to meet with them on at least three occasions. During the visits by the PDA representatives the

Kaminskes were asked by the PDA representatives to point out what personal property had been damaged, and the Kaminskes did so. Among the items of personal property identified by the Kaminskes as having been damaged were a computer and various appliances, including a refrigerator, a freezer, a television, a VCR, a microwave oven, a washing machine and a water softener. PDA included these items on its lists of items for repair or replacement. (R. 33 Exs. A, B.)

Prior to meeting with Weliky on September 16, the Kaminskes were asked by WCL to furnish information concerning the expenses and damages that they had sustained as a result of the evacuation. According to defendant, the Kaminskes furnished a handwritten two-page list that included the computer and appliances. (DFOF ¶ 20.) The list showed the amount of money that would be needed in order to replace these items and also included an amount of $1,740.15 identified as money that plaintiff had spent to rent a camper during the evacuation period. (DFOF ¶ 18.) Plaintiff disagrees, however, stating that only Laurie furnished a two-page list including mileage, rental, food, tips, clothing and other expenses. (PFOF at 2.) During the meeting on September 16, plaintiff, plaintiff's wife and Weliky discussed the various items on plaintiff's two-page list, including the computer and appliances. No settlement was reached.

According to defendant, at the Kaminskes' September 25 meeting with Wingo they provided Wingo with another handwritten two-page list that again included the computer and appliances. (DFOF ¶ 20.) The list contained amounts that would be needed to replace these items. This second list also included the same amount for camper rental. Plaintiff, however, disagrees, saying that only he himself provided the list, and only at the request of someone at WCL. (PFOF at 2.) During

---

1. "DFOF" refers to defendant's proposed findings of fact. "PFOF" refers to plaintiff's response to the proposed findings.

the meeting, plaintiff discussed with Wingo the various items contained on the list, and Wingo explained which items WCL would be willing to pay for as part of a settlement. At the conclusion of the meeting, the Kaminskes and Wingo agreed to a payment by WCL of $30,000 to settle the plaintiff's claim for damages. Plaintiff had wanted $35,000; defendant had wanted to pay $25,000. (*See* R. 29 Ex. D at 138, Ex. F at 50–52, Ex. H at 14.) Whether the parties agreed on what claimed items the $30,000 was based on is disputed.

Following the settlement, on September 27, 1996 Weliky sent the Kaminskes a letter stating that WCL wanted to pick up several items, including the computer and refrigerator, because it had made an allowance for new items in the settlement agreement. (R. 33 Ex. F.) The settlement documents, however, did not contain any provision regarding WCL salvaging these items. (R. 33 Ex. D.)

Plaintiff and Weliky had several telephone conversations during October concerning WCL's taking possession of the computer and appliances. During their conversations plaintiff told Weliky that WCL had no right to possession of the items. He also told Weliky that the computer and various appliances had been thrown away. According to plaintiff, during one telephone conversation Weliky stated words to the effect that: "You'd better let us come in your house and pick them up or I'm going to get the D.A. involved, and he's going to make your life miserable." (R. 29 Ex. D at 174.)

The Kaminskes did not rent a camper during the evacuation, but instead stayed with Laurie Kaminske's brother, Steve Thomas. On December 31, 1996, Thomas informed Weliky that the Kaminskes had not rented a camper during the evacuation period but instead had stayed with him.

Weliky asked Gary Wait, a private investigator retained by WCL, and James MacFall, the investigator for the Waupaca County District Attorney, to investigate whether there had been a misrepresentation by plaintiff and his wife in connection with their claim for rental of a camper, and, according to plaintiff, the appliances. (*See* PFOF at 2.) Wait and MacFall went to plaintiff's home to discuss the camper rental and, according to plaintiff, possibly the appliances. (*See id.*) While Wait and MacFall were there, they saw several of the appliances that were part of the Kaminskes' claim. The appliances were still being used by the Kaminskes and appeared to be undamaged. Wait and Mac-Fall told Weliky what they had observed at plaintiff's home and advised Weliky that they believed a crime had been committed with respect to representations that had been made by the Kaminskes concerning the computer and appliances. They also recommended to Weliky that WCL should ask the Waupaca County District Attorney to obtain a search warrant in order to seize the computer and appliances.

According to WCL, the information that it had obtained concerning the computer and appliances was turned over to the district attorney, who obtained a search warrant for these items. (DFOF ¶ 29.) Plaintiff, however, contends that WCL lied to the district attorney when it relayed certain representations allegedly made by plaintiff during the settlement process. (PFOF at 3.) On January 9, 1997, the search warrant was executed by the Weyauwega Police Department, and the computer and appliances were taken into police custody. The computer and, with one exception, the appliances, were found by the police to be in good operating condition and in use.

Over the next eight months an investigation was conducted under the direction of Waupaca County Assistant District Attorney William Lennon. According to WCL, during the investigation it provided Lennon with all of the information and documents that it had concerning the Kaminskes and the settlement of their claim for damages, including WCL's claim file; the information that WCL provided included all facts concerning the work done by PDA and all facts relating to whether WCL had

a right to obtain the computer and appliances from plaintiff and his wife as a result of the settlement. (DFOF ¶ 32.) Plaintiff, however, states that WCL failed to disclose to Lennon (1) that Wingo had relied on PDA's estimate of personal property damage and that he still believed those were legitimate damages; and (2) that Weliky, on behalf of WCL, had threatened plaintiff with criminal prosecution if he did not surrender the appliances. (PFOF at 3.)

Based upon the investigation, Lennon determined that the Kaminskes had committed a fraud in connection with the settlement of their claim with WCL by misrepresenting that the computer and appliances had been damaged beyond repair and needed to be replaced. As a result, he decided to charge them with theft by fraud under Wis. Stat. § 943.20(1)(d)(3)(1)(c). Consistent with the practice of the district attorney's office, Lennon made the decision to charge plaintiff and his wife only after he determined he had enough evidence to prove the charge beyond a reasonable doubt.

After Lennon drafted the complaint charging the Kaminskes he asked Weliky to sign the complaint. Weliky declined to do so. Lennon decided to issue the complaint anyway and had Chief Perry of the Weyauwega Police Department sign the complaint.

After the complaint issued on September 11, 1997, the Kaminskes retained Attorney Thomas Johnson to represent them. Initially plaintiff and his wife demanded their right to a preliminary hearing. Subsequently, they waived their right to a preliminary hearing, and on November 25, 1997 Judge Schaefer of the Waupaca County Circuit Court found that there was probable cause to believe that a crime had been committed and that the Kaminskes probably had committed that crime.

Johnson then filed a motion to dismiss the complaint. He conceded that the district attorney could likely prove the facts alleged in the complaint but contended there were insufficient grounds for prose-cuting plaintiff and his wife because the facts alleged did not establish a violation of Wis. Stat. § 943.20(1)(d)(3)(1)(c). On March 20, 1998 Waupaca County Circuit Court Judge Kirk denied the motion, finding that the facts in the complaint provided probable cause for the charge brought against the Kaminskes.

While the case was pending Johnson offered to settle. He proposed that in return for a dismissal of the criminal charge the Kaminskes would return the full $30,000 paid by WCL on condition that the settlement was voided and they could pursue a civil action against WCL. After conferring with WCL, Lennon declined the offer made by Johnson but offered a counterproposal under which the settlement would remain in effect, but plaintiff and his wife would make restitution to WCL by paying back the amount included in the settlement for the computer and appliances and also reimbursing WCL for its out-of-pocket costs in investigating the Kaminskes' alleged fraud. Johnson rejected Lennon's counterproposal. At no point during the settlement discussions did Johnson offer to have the Kaminskes reimburse WCL for the money that WCL had paid for the computer and appliances.

Subsequently, Attorney John Cabaniss, who is representing plaintiff in this case, was retained to represent plaintiff, while Johnson continued to represent Laurie Kaminske. The case against the Kaminskes proceeded to trial on March 1, 1999. After two days of evidence Judge Kirk found plaintiff and his wife not guilty. In issuing his ruling from the bench, Judge Kirk also found that there was probable cause for the charge of theft by fraud to have been brought against the Kaminskes.

Between the time the complaint issued and the time of the trial a number of newspaper articles appeared concerning the criminal proceedings and the charge brought against the Kaminskes. Immediately after Judge Kirk issued his ruling, Roger Pitt, a reporter for the Appleton *Post–Crescent* who had been covering the

trial, asked Weliky for his reaction to the ruling. Weliky told Pitt that he was disappointed with the judge's decision and that he believed that the decision was "a mark against all those people who settled in good faith." On March 3, 1999, an article written by Pitt appeared in the *Post–Crescent* indicating that Judge Kirk had found plaintiff and his wife not guilty. Weliky's comments appeared at the end of the article.

On March 23, 1999, plaintiff and his wife sued WCL. In their complaint the Kaminskes alleged that WCL committed three torts relating to the prosecution and to Weliky's comments to the *Post–Crescent:* (1) malicious prosecution, (2) abuse of process, and (3) defamation.

■ On January 26, 2000, plaintiff and his wife moved to amend their complaint. The desired amended complaint, submitted with the motion, drops plaintiff Laurie Kaminske from the case and clarifies (as plaintiffs put it) or adds (as defendant puts it) an allegation that defendant committed an abuse of process and malicious prosecution in making false representations to the district attorney in connection with the search warrant application. The parties have since stipulated to the dismissal of Laurie Kaminske's claims with prejudice.

Defendant objects to the amendment regarding the search warrant, however, on the ground that it is untimely: discovery closed on January 16, 2000, and at the time the motion to amend was filed defendant was preparing a summary judgment motion.

Federal Rule of Civil Procedure 15 states that leave to amend a party's pleading "shall be freely given when justice so requires." Notwithstanding defendant's objection, plaintiff's proffered amended complaint does not add totally new material. In addition to asserting that defendant committed an abuse of process or malicious prosecution relating to the filing of a criminal complaint against plaintiff, the original complaint in fact referenced the search warrant as well. Paragraph 14 of the complaint stated that

[b]ased on the false representations that the items at issue were the legal property of Wisconsin Central and that Wisconsin Central had legally relied upon statements made by plaintiffs regarding the value of said items during the claims process, a search warrant was obtained from the Waupaca County Circuit Court on January 9, 1997[,]

which warrant included ten particular listed items. Paragraph 15, then, alleges that a criminal complaint issued against plaintiff.

Paragraph 14 put defendant on notice that its involvement in the obtaining of the search warrant was also at issue. Plaintiffs are not required to plead legal theories, *Ryan v. Illinois Dep't of Children and Family Servs.,* 185 F.3d 751, 764 (7th Cir.1999), and paragraph 14 set forth the alleged fact that a search warrant was obtained based upon representations attributed to defendant.

Further, plaintiff did not delay so long in moving to amend that the motion should be denied. Defendant does not indicate any specific prejudice it will suffer—such as any need for additional discovery—other than the possibility that its summary judgment motion, which it had not yet filed as of the date of the amendment motion, would not cover the search warrant issue as well.

The motion to amend will be granted. As it turns out, defendant mentioned the supposed search warrant claims in its brief in support of the motion. Plaintiff then discussed the search warrant theory at length in its opposition brief, and referenced evidence he believed supported sustaining the search warrant related claims even in the face of the summary judgment motion. As a result, I will consider the summary judgment motion as covering these newly-clarified/newly-added claims as well.

## II. SUMMARY JUDGMENT STANDARD

As is well known, summary judgment is proper if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323, 106 S.Ct. 2548. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322–24, 106 S.Ct. 2548.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago,* 119 F.3d 1286, 1291 (7th Cir.1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its fa-

vor. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1205 (7th Cir.1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "A district judge faced with [a summary judgment] motion must decide ... whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted).

## III. DISCUSSION

■ In a diversity jurisdiction case a federal court generally applies the law of the state in which it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Doe v. Roe No. 1,* 52 F.3d 151, 154 (7th Cir.1995). The parties here agree that Wisconsin law applies to plaintiff's claims.

### A. Malicious Prosecution

■ Under Wisconsin law plaintiff Kaminske's claim for the tort of malicious prosecution requires six elements: (1) a prior institution or continuation of judicial proceedings against Kaminske; (2) the former proceedings were "by, or at the instance of," WCL; (3) the prior proceedings terminated in Kaminske's favor; (4) malice on the part of WCL in instituting the former proceedings; (5) a want of probable cause for the institution of the former proceedings; and (6) injury or damage resulting to Kaminske from the former proceedings. *Strid v. Converse,* 111 Wis.2d 418, 423, 331 N.W.2d 350 (1983).

These elements apply to the institution of prior civil as well as criminal proceedings. *Id.* at 424, 331 N.W.2d 350. The absence of any one element is fatal to the claim. *Id.*

### 1. Institution of Proceedings

■ WCL argues first that for purposes of the second element it did not institute or commence the criminal proceedings against plaintiff because the decision to prosecute was the prosecutor's and the complaint was signed by the chief of police when Weliky refused to sign. I disagree. *Strid* states that proceedings may be "at the instance of" a party. The applicable Wisconsin pattern jury instruction indicates that the former proceedings "must have been put in motion by or at the instance of the defendant in the malicious prosecution action." Wis. JI–Civil 2600 at 2 cmt (1998). Notwithstanding the fact that the prosecutor made his own decision to go ahead when Weliky would not sign the complaint and notwithstanding the fact that the chief of police actually signed it, the undisputed facts also show that WCL's investigator went to the police in the first place and pursued a search warrant, and Weliky filled in information underlying the complaint, (*see* R. 33 Ex. I at 19, 22). WCL set the proceedings in motion and the criminal case was initiated at its instance.[2]

### 2. Probable Cause

Next, WCL argues that probable cause is missing, and here it fares better. "Probable cause" is "the quantum of evidence that would lead an ordinary and reasonable layman in the circumstances, to believe that the plaintiff committed a crime." *Hajec v. Novitzke,* 46 Wis.2d 402, 415, 175 N.W.2d 193 (1970) (internal quotation marks omitted).

■ Mere acquittal on the criminal charge does not establish a lack of probable cause. *Johnson v. Hondo, Inc.,* 125 F.3d 408, 417 (7th Cir.1997). And in announcing his decision that the Kaminskes were both not guilty of the charge of theft by fraud, Judge Kirk in fact stated the following:

> Now, I do not mean in any stretch of the imagination to suggest that this prosecution was without probable cause or was frivolous. It wasn't. If you take the State's evidence in the best light, it could reasonably be argued that the defendants' conduct was not only inappropriate but potentially criminal.

(R. 33 Ex. C pt. 2 at 53.) WCL obviously believes that this finding negates any possibility of plaintiff proving the absence of probable cause.

■ Plaintiff admits that the district attorney did in fact have probable cause and that he is bound by Judge Kirk's finding to that effect. (*See* R. 32 at 9.) Instead, he contends that WCL is not protected by this finding. Although he provides no authority for distinguishing WCL from the district attorney for purposes of the probable cause issue, the pattern jury instruction supports such a differentiation by its references to the knowledge that a *defendant* rather than prosecuting authority has: "If at the time (*defendant*) initiated charges against (*plaintiff*), (*defendant*) knew or had reason to believe that (*plain-*

---

2. WCL relies on *Fuller v. Fuller Brush Co.,* 595 F.Supp. 1088 (E.D.Wis.1984), for the proposition that if a prosecutor files the criminal case the individual who went to police cannot be considered to have begun the proceedings. *Fuller,* however, provides no reasoning but only one conclusory sentence saying that "[b]ecause the action was filed by the prosecuting attorney in Kansas, no claim can lie here for malicious prosecution." *Id.* at 1090. That one sentence is not enough to override the language of the second element for the malicious prosecution tort as stated and repeated by the Supreme Court of Wisconsin in several cases. In *Gowin v. Altmiller,* 663 F.2d 820, 823 (9th Cir.1981), also cited by defendant, the court's reference to the independent decision of the prosecutor related not to whether the individuals in that case had instigated criminal proceedings, but rather whether they were entitled to the advice-of-counsel defense, which I also discuss below.

*tiff*) was not guilty of the charge(s), then it can be said that there was no probable cause to charge (*plaintiff*)." Wis. JI–Civil 2600 at 1. Therefore, if WCL knew more than the prosecutors did and the additional information would have reasonably led WCL to believe plaintiff innocent of the charge of theft by fraud, then WCL may not have had probable cause for going to the police to obtain the search warrant or instigating or assisting in the filing of the criminal charge.

Plaintiff suggests first that WCL had additional information, namely that it had hired and relied on PDA to make independent appraisals and that PDA had unearthed new information indicating that plaintiff was not guilty, but that WCL did not disclose such information to the prosecutors. (*See* R. 32 at 9.) Second, plaintiff says that WCL should be considered not to have had probable cause because it instigated the search warrant and the proceedings against plaintiff by lying. (*See id.*) Plaintiff contends that WCL's representatives, Wait and Wingo in particular, lied to the prosecutors when they stated that plaintiff had informed WCL prior to settlement that certain items, in particular the refrigerator and/or computer, had been discarded. In support of this allegation of lying, plaintiff states in an affidavit that at no time prior to settlement with WCL did he "represent to anyone that any of the items . . . had been discarded or were not available for inspection by Wisconsin Central." (R. 33 at 1.)

Because as stated above, however, probable cause is the amount of evidence "that would lead an ordinary and reasonable layman in the circumstances, to believe that the plaintiff committed a crime," *Hajec*, 46 Wis.2d at 415, 175 N.W.2d 193 (internal quotation marks omitted), what matters for the issue of whether WCL had probable cause is the information WCL held at the time it sought the search warrant and assisted with the criminal complaint. The fact that WCL may have lied to the prosecutors is relevant only to the extent that it bears on what WCL reasonably believed.

I therefore must look at what evidence WCL had at the time it initiated proceedings involving the search warrant and the criminal complaint and whether such evidence could cause a reasonable layman in WCL's circumstances to believe that plaintiff committed a crime.

Laypersons are held to no higher a standard for having probable cause than prosecutors. To the contrary, under *Hajec* Judge Kirk's finding of probable cause by definition is based on the layperson's standard, and that standard does not require that laypersons appreciate all of the nuances and distinctions contained in the law, *see Johnson*, 125 F.3d at 416. The Seventh Circuit in *Johnson* recognized that laypersons often feel wronged by another's anti-social conduct that does not legally qualify as a crime, and therefore it is unfair to hold a layperson to the same standard as a prosecutor when evaluating probable cause.

At the time WCL went to the district attorney it had evidence that: (1) plaintiff and his wife had claimed as expenses rental of a camper, when they had in fact stayed with a relative; and (2) plaintiff had said prior to and during settlement discussions that certain items were damaged beyond repair or unusable, but when Wait went to plaintiff's house four months after the settlement he observed plaintiff using those items. At the time that it acquired this knowledge WCL had been settling the claims of many Weyauwega residents and was concerned about the possibility of fraud. Further, WCL believed that it overpaid the Kaminskes. Under these circumstances, no reasonable jury could find that the information WCL possessed did not amount to probable cause to believe that it had been defrauded. A layperson reasonably believing that it had paid for a camper which not been used and for items which had not been damaged could reasonably believe that plaintiff had committed a crime.

Plaintiff claims that Wait did not divulge to the district attorney or judge at the search warrant hearing that, in settling

the claim, WCL in fact relied on PDA's estimates rather than the Kaminskes' statements. But if WCL reasonably believed that plaintiff lied to obtain a larger settlement the extent to which it relied on other estimates does not negate that it honestly believed that plaintiff committed fraud.

Nor does WCL's purported knowledge that plaintiff did not actually state that certain items had been discarded nullify its knowledge that the camper charges were unwarranted and that unusable appliances turned up in use. Unlike the statement regarding items being discarded, plaintiff has presented no evidence rebutting Wingo's statement to WCL that plaintiff said that certain items were unusable or damaged beyond repair. The comment regarding disposal of certain items added little if anything to the damaged-beyond-repair comments, as evidenced by the focus at the search warrant hearing itself. The prosecutor argued to the court that the items to be identified in the search warrant were evidence of a crime *not* based on a representation that they had been discarded, but instead because of the representation that they were damaged beyond repair. (R. 33 Ex. H at 11; *see also* R. 33 Ex. 1 at 12 (prosecutor's deposition testimony that the "gist" of what Wait told him was that items that had been claimed to be "damaged beyond repair" were "apparently undamaged, apparently usable").) [3]

The argument that WCL's knowledge at the time the criminal charge was filed amounted to probable cause is even stronger. At the time of the charge, WCL had the same evidence it had previously, which I have already found to be adequate. Moreover, if at such time WCL had the same information that the prosecutors had, Judge Kirk's finding that the prosecutor had probable cause would apply equally to WCL. Plaintiff provides no evidence that at the time of the criminal complaint the prosecutors did not know about PDA's role in the investigation and have in their hands all the information PDA had provided to WCL. Plaintiff claims that Wingo did not tell the prosecutors that he relied on PDA's estimates rather than the Kaminskes' statements. But WCL is not required to know that reliance is an element of theft by fraud in order to have probable cause. *Johnson,* 125 F.3d at 416. Plaintiff also claimed that Wingo lied when he said that plaintiffs had said they had discarded certain items. However, Wingo was subjected to rigorous cross-examination on this point at the trial and Judge Kirk still found that probable cause existed.

Because on the record before me plaintiff has no possibility of establishing a lack of probable cause for the search warrant proceedings and issuance or the filing of the criminal complaint, summary judgment must be granted on the malicious prosecution claim. [4]

---

**3.** Similarly, Judge Kirk did not rely at all on any statement by WCL representatives that plaintiff said he had discarded the items. He stated that WCL's settlement was for damage to the items. Whether plaintiff had kept the items or not was "of no consequence." (R. 33 Ex. C pt. 2 at 56; *see also id.* pt. 1 at 9 (prosecutor at trial in opening statement stating: "[T]he defendants made false statements as [to] the condition of each of these items. They may have made other false statements during this settlement process, but it's easiest if we focus on false statements concerning the condition of those items I've listed.").)

**4.** In addition, reliance on the "advice of counsel," particularly a prosecutor if in a criminal matter, supplies a complete defense to a lack of probable cause. *Hajec,* 46 Wis.2d at 416,

175 N.W.2d 193; Wis. JI–Civil 2600 at 2 cmt. To qualify for the defense WCL had to provide a "full and fair statement of all material facts within the defendant's knowledge and all the information possessed by him" to the prosecutor. *Meyer,* 66 Wis.2d at 180, 224 N.W.2d 419; *see* Wis. JI–Civil 2610 at 1 (1993). The ultimate truth of the facts presented is not as important as an "honest belief in the existence of the facts." *Hajec,* 46 Wis.2d at 416, 175 N.W.2d 193.

Plaintiff argues that WCL lacked honesty, pointing to the "false representations" allegedly made to prosecutors. (*See* R. 32 at 9.) The court assumes the "false representations" again concern the disputes over whether plaintiff told Wingo certain items had been disposed and whether WCL withheld informa-

## B. Abuse of Process

The tort of abuse of process occurs when one "uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed." *Strid v. Converse*, 111 Wis.2d 418, 426, 331 N.W.2d 350 (1983); *Brownsell v. Klawitter*, 102 Wis.2d 108, 115, 306 N.W.2d 41 (1981). The elements of the tort are: (1) a purpose other than that which the process was designed to accomplish, and (2) "a wilful act in the use of process not proper in the regular conduct of the proceedings." *Brownsell*, 102 Wis.2d at 115, 306 N.W.2d 41; *see also Strid*, 111 Wis.2d at 427, 331 N.W.2d 350. Abuse of process is broader than malicious prosecution because malice, want of probable cause, and termination in the plaintiff's favor are not required. Instead, abuse of process "lies even in those instances where: ... legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Strid*, 111 Wis.2d at 426, 331 N.W.2d 350 (internal quotation marks omitted).

Defendant contends that the two elements required for an abuse of process claim are not met by plaintiff's evidence. Plaintiff, in response, contends that WCL's purpose in seeking the search warrant proceedings was either to obtain salvage items or to harass the Kaminskes because they would not voluntarily turn the items over, and that WCL misused the process when Wait lied in order to obtain the search warrant.

During discovery in this case plaintiff pursued as the misuse of process WCL's rejection of a settlement proposal during the course of the criminal prosecution that would have returned the parties to their presettlement positions and likely would have resulted in the dismissal of the criminal case; WCL instead saw the prosecution through to its conclusion. Plaintiff has since abandoned that theory. (R. 32 at 5.) Instead, he focuses on defendant's institution of both the search warrant and criminal proceedings and alleged lying during both.

Defendant suggests that it had no improper motive in seeking the search warrant or in pursuing the criminal case— that it believed plaintiffs had defrauded it. (*See* R. 27 at 10.) Plaintiff, however, presents sufficient evidence to create a material question of fact for the jury. Plaintiff correctly states that the settlement agreement does not include a provision allowing WCL to obtain as salvage the various items the Kaminskes said were damaged. Nevertheless, just a few days after the settlement Weliky sent the Kaminskes a letter stating that WCL planned to pick up the items from their home. Plaintiff and Weliky spoke by phone several times, with plaintiff stating that he did not believe WCL had a right to pick up the items. (*See* R. 29 Ex. D at 174–77.) In response, according to plaintiff's deposition, Weliky responded with a threat to get the district attorney involved, "and he's going to make your life miserable." (*Id.* at 174.) Weliky has denied the statement, (*see* R. 33 Ex. C at 146–47), but I take the facts in plaintiff's

---

tion regarding PDA's role and possibly the salvage dispute.

In regard to the criminal complaint stage, I have already found that the prosecutors knew what WCL knew—that WCL had made a full and frank disclosure. Regarding the search warrant, the disposal comment again is not substantial enough to prevent finding that WCL made a full and frank disclosure of all *material* information. As for the allegedly withheld information, Lennon thought whatever investigation PDA had done was irrelevant to his case, as plaintiff would be guilty

even if WCL relied upon his alleged misrepresentations only in part. (*See* R. 29 Ex. G at 91–92.) Lennon similarly found irrelevant to his charging decision any evidence about whether WCL was entitled to salvage the Kaminskes' appliances. (*See* R. 29 at 89–90.) In light of the fact that PDA's involvement and the salvage matter made no difference to the trial prosecutor, no reasonable jury would be able to find that the prosecutor's office would have treated the evidence differently and found it material at the search warrant stage.

favor on summary judgment. On these facts, a reasonable jury could find that WCL had the ulterior motives of coercing plaintiff into turning over the items for salvage and/or punishing plaintiff for not cooperating. *See Thompson v. Beecham,* 72 Wis.2d 356, 362, 241 N.W.2d 163 (1976) (indicating that the ulterior motive usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself).

The second requirement of the tort is met by evidence of " '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.' " *Tower Special Facilities, Inc. v. Investment Club, Inc.,* 104 Wis.2d 221, 229, 311 N.W.2d 225 (Ct.App. 1981) (quoting *Thompson,* 72 Wis.2d at 362, 241 N.W.2d 163). Defendant contends that this element also requires some " ' "*irregular steps* " taken under cover of process *after its issuance.*' " (R. 27 at 7) (quoting *Novick v. Becker,* 4 Wis.2d 432, 436, 90 N.W.2d 620 (1958).) Defendant suggests that this means WCL had to commit some additional act misusing the process after the issuance of the search warrant or complaint. (*See id.* at 7 n. 3.) Defendant, however, reads too much into these words from *Novick* as well as into language in *Strid* that the second element requires a "subsequent misuse of the process," *see Strid,* 111 Wis.2d at 427, 331 N.W.2d 350, and language in *Pronger v. O'Dell,* 127 Wis.2d 292, 297, 379 N.W.2d 330 (Ct.App.1985), that "the evidence must reflect more than the proper use of process with a bad motive."

The Wisconsin pattern jury instruction on abuse of process does not read such restrictions into the definition of abuse of process. It follows the general definition, stating that an abuse of process occurs simply "when a person uses a legal process against another primarily to accomplish a purpose for which it was not designed." Wis. JI–Civil 2620 at 1 (1994). The pattern jury instruction indicates that the use of process can be "caus[ing] a subpoena to be issued" or "commenc[ing] an involuntary commitment proceeding." *Id.*

Moreover, actual examples of abuse of process as found by the Wisconsin Supreme Court, even in those cases cited above that use language suggesting a narrow definition of the tort, do not indicate that an act additional to the wrongful use of a proceeding is required. For instance, in *Strid* the court found an abuse of process claim adequately alleged where a husband had his attorney obtain a bench warrant for his wife in order to coerce her into granting visitation with the children. According to the court, this coercive purpose was "clearly ulterior and the use of the bench warrant to obtain these goals is 'misuse of the process to obtain some ulterior advantage.' " *Strid,* 111 Wis.2d at 428, 331 N.W.2d 350 (quoting *Thompson,* 72 Wis.2d at 363, 241 N.W.2d 163). In *Thompson,* the court recognized that the second element could be met by a threat to continue a currently-proceeding lawsuit unless the opposing party ceased certain activity, or by evidence stating that the suit was being used to embarrass or punish the opposing party. *See Thompson,* 72 Wis.2d at 364, 241 N.W.2d 163. Likewise, in *Maniaci v. Marquette University,* 50 Wis.2d 287, 301, 184 N.W.2d 168 (1971), the court found an adequate claim of abuse of process when university officials sought and obtained a detention order not for purposes of inquiry into a student's mental condition as the detention order was designed, but instead to physically prevent her from leaving school. The Wisconsin Supreme Court has also described the English case William L. Prosser cites in his treatise as the leading authority on abuse of process: where the defendant had the plaintiff arrested in order to compel him through duress to surrender the register of a vessel, without which the plaintiff could not go to sea. *Brownsell,* 102 Wis.2d at 113, 306 N.W.2d 41 (citing William L. Prosser, *Handbook of the Law of Torts* § 121, at 856 (4th ed.1971)).

In their commentary on abuse of process Prosser and Keeton make clear that when cases speak of an act being required in addition to the bringing of process they

mean that the defendant must do or say something such as make a threat, showing that he is seeking to use the process to accomplish an unauthorized purpose:

The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Some of the decisions have said that there must be an improper act, such as an extortion attempt, after the process has issued and that an act committed beforehand is not enough. Most of these cases probably stand only for the narrower proposition that there must be an overt act and that bad purpose alone is insufficient. Thus a demand for collateral advantage that occurs before the issuance of process may be actionable, so long as process does in fact issue at the defendant's behest, and as a part of the attempted extortion.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121, at 898 (5th ed.1984) (footnotes omitted).

In the present case if WCL threatened to use the legal process in order to obtain the items for salvage or to retaliate against plaintiff for his handling of the settlement and did in fact use the legal process for such purpose(s), the required elements of the tort would be present: i.e., an ulterior purpose and the commission of an act or threat aimed at an objective not legitimate in the use of the process. Plaintiff has presented sufficient evidence to get to a jury. Defendant's motion for summary judgment regarding this claim must be denied.

**C. Defamation**

Plaintiff claims that he was defamed by Weliky's comments to the *Post–Crescent* reporter as printed in the paper. According to plaintiff's complaint, WCL, through Weliky, "falsely stated that plaintiff[ ] had defrauded the railroad even after the court's entry of the not guilty verdict and by falsely stating that plaintiff[ ] acted in bad faith thereby intending to damage and harm the reputation of plaintiff[ ] in the community." (R. 1 ¶ 28.) The allegation relates to the following two paragraphs near the end of the seventeen-paragraph *Post–Crescent* article:

Jeff Weliky, director of claims and safety with Wisconsin Central Ltd., said he was disappointed with the judge's decision.

"It is a mark against all those people who settled in good faith," he said.

(R. 29 Ex. U.)

■ In Wisconsin, the elements of a defamatory communication are: (1) a false statement; (2) communicated by speech, conduct, or in writing to a third person; (3) that is unprivileged and tends to harm one's reputation so as to lower that person in the estimation of the community or deters others from associating or dealing with the person. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis.2d 524, 534, 563 N.W.2d 472 (1997); Wis. JI–Civil 2500 at 1 (1993) and 2501 at 1 (1991). These elements derived from a test in the Restatement, adopted by the Supreme Court of Wisconsin: " 'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Waldo v. Journal Co.*, 45 Wis.2d 203, 207, 172 N.W.2d 680 (1969) (quoting Restatement of Torts § 559 (1938)).

■ Whether a communication is capable of a defamatory meaning is a question of law for the court. *Lathan v. Journal Co.*, 30 Wis.2d 146, 153, 140 N.W.2d 417 (1966); Wis. JI–Civil 2500 at 4. The legal standard for determining whether a statement is capable of conveying a defamatory meaning is whether the language is reasonably capable of conveying a defamatory meaning to the ordinary mind and

whether the meaning ascribed by the plaintiff is a natural and proper one. Wis. JI–Civil 2500 at 5. "[T]he words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi v. Hanson,* 30 Wis.2d 271, 276, 140 N.W.2d 259 (1966); *see also Tatur v. Solsrud,* 174 Wis.2d 735, 741, 498 N.W.2d 232 (1993) (quoting same).

■ Again, the statement must be evaluated in context. *See Frinzi,* 30 Wis.2d at 276, 140 N.W.2d 259; *Schaefer v. State Bar of Wis.,* 77 Wis.2d 120, 124, 252 N.W.2d 343 (1977). And a newspaper article must be considered as a whole in determining whether certain language contained therein is defamatory. *Waldo,* 45 Wis.2d at 208–09, 172 N.W.2d 680.

■ If the communicated language is capable of either a defamatory or nondefamatory meaning, a jury question generally is presented whether such communication was understood in fact in a defamatory sense by the persons to whom it was published. *Frinzi,* 30 Wis.2d at 276, 140 N.W.2d 259. If the communication cannot reasonably be considered defamatory or be so understood by the public under the circumstances, then summary judgment may be granted. *See id.* at 276, 278, 140 N.W.2d 259; *see also Schaefer,* 77 Wis.2d at 124, 252 N.W.2d 343; Wis. JI–Civil 2500 at 4.

WCL contends that Weliky's comments cannot be defamatory because (1) they are opinions, not statements of fact; and (2) the undisputed evidence shows that they did not harm plaintiff's reputation, lower him in the eyes of the community, or deter others from associating or dealing with him.

■ A statement's characterization as opinion versus fact is not dispositive. The United States Supreme Court has refused to give any special, wholesale, First Amendment protection to opinions. *See*

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). As the Court indicated, the statement "in my opinion Jones is a liar," can cause as much damage to reputation as "Jones is a liar." *See id.* at 19, 110 S.Ct. 2695. Instead, the Court indicated that notwithstanding the general understanding that " 'there is no such thing as a false idea,' " *see id.* at 18, 110 S.Ct. 2695 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)), under the federal constitution when expressions of opinion contain or imply an assertion of provably false fact they are actionable, *see id.* at 18–21, 110 S.Ct. 2695; *Harris v. Quadracci,* 856 F.Supp. 513, 519 (E.D.Wis.1994), *aff'd,* 48 F.3d 247 (7th Cir.1995).

■ Wisconsin law recognizes a similar distinction. Generally, a defamatory communication must be a statement of fact rather than an expression of opinion. *See* Wis. JI–Civil 2500 at 2. But communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs. *Milsap v. Journal/Sentinel, Inc.,* 100 F.3d 1265, 1268 (7th Cir.1996) (discussing Wisconsin law); *Converters Equip. Corp. v. Condes Corp.,* 80 Wis.2d 257, 263–64, 258 N.W.2d 712 (1977). When the declarant departs from expressing pure opinion and communicates a "mixed opinion"—a communication blending an expression of opinion with a statement of fact—the communication may nevertheless be actionable if it implies the assertion of undisclosed defamatory facts as the basis of the opinion. *Milsap,* 100 F.3d at 1268; Wis. JI–Civil 2500 at 2 (citing Restatement (Second) of Torts § 566 (1977)).

■ The first comment attributable to Weliky—that he was disappointed with the not guilty verdict—is a comment of pure opinion rather than a statement mixed with fact or implying a provably false fact within Weliky's knowledge. The statement actually implies no facts at all regarding plaintiff,[5] but instead describes

---

5. If the statement impugns anyone it is Judge Kirk for rendering the not guilty verdict.

merely the idea and reaction in Weliky's own head. As Weliky's subjective impression it is not sufficiently factual to be susceptible of being proved true or false. *See Harris,* 856 F.Supp. at 522.

The second comment attributable to Weliky—that plaintiff's not guilty verdict was "a mark against all those people who settled in good faith"—standing alone can be considered to contain or imply an assertion of provably false fact: that plaintiff in fact committed the crime and/or settled his claim with WCL in bad faith. But, as stated above, Weliky's statement must be assessed within the context and under the circumstances in which uttered and printed.

When stated verbally, Weliky's comments obviously followed Judge Kirk's announcement of his decision, which relied on his determination that Weliky's company had not been defrauded. Judge Kirk's decision was based in large part on his finding that WCL, through PDA, had been able to assess the condition of the refrigerator and computer itself and therefore could not claim reliance on the Kaminskes' representations.

As indicated by *Waldo,* the statement as printed must be assessed in the context of the article as a whole. The headline of the *Post–Crescent* article read in large, bold letters: "Couple not guilty in railroad claim." The first thirteen paragraphs related the not guilty verdict, Judge Kirk's reasoning, and the parties' evidence and arguments at trial. The first paragraph, for instance, starts by saying that Judge Kirk "found Kim and Laurie Kaminske of Weyauwega not guilty Tuesday of felony theft in attempting to defraud Wisconsin Central Ltd." (R. 29 Ex. U.) After pointing out that the Kaminskes were the only people charged with fraud regarding their settlements with the railroad, the article went on to state Judge Kirk's findings that the state failed to show that WCL had been deceived and defrauded because the railroad had instead relied on its agent, PDA. While the article then relayed the assistant district attorney's arguments, it then related more of the judge's decision and quotes from both defense attorneys. Paragraph fourteen mentioned the $30,000 settlement the Kaminskes had negotiated with WCL. After the two paragraphs plaintiff claims defamed him, the final paragraph of the article merely relates Weliky's statement that there had been about 2,300 settlements as a result of the WCL train derailment.

The article in no way implied that Weliky knew any facts about the criminal case that had not been disclosed at the trial or considered by Judge Kirk. Instead, the article merely identifies him as WCL's "director of claims and safety"—just a WCL representative.

In this context and under these circumstances, no reasonable jury could actually find that Weliky's comment as either uttered or printed constituted an assertion or implication of objective fact as opposed to sour grapes. In "the plain and popular sense" in which Weliky's comments "would naturally be understood in the context in which they were used and under the circumstances they were uttered," *Frinzi,* 30 Wis.2d at 276, 140 N.W.2d 259, no reasonable jury could find that they were anything but the knee-jerk reaction of someone who thought he was victimized but has been told that he brought the loss upon himself. To be defamatory, Weliky's statement had to tend to harm plaintiff's reputation so as to lower plaintiff in the eyes of the community or deter others from associating or dealing with him. At the end of a trial finding plaintiff not guilty and at the end of an article describing that finding in detail and relating the court's finding of fault on the part of WCL, Weliky's statement cannot reasonably be considered capable of having such effect on plaintiff's reputation. Ordinary persons hearing or reading the comments complained of would undoubtedly understand Weliky's comments to be an expression of his opinion rather than a assertion of fact.

Plaintiff argues that in considering the context of Weliky's statement I must look

at the fact that an upstanding man in a small community was accused of a fraud that he did not commit. The Ninth Circuit recently stated that in determining whether a comment is an opinion versus a statement of fact, a court should look to the totality of the circumstances in which the comment was made, including whether the comment itself is sufficiently factual to be proved true or false, the specific context of the statement, *and* the broad context of the statement. *Weiner v. San Diego County,* 210 F.3d 1025, 1031 (9th Cir.2000); *see also Martin v. Outboard Marine Corp.,* 15 Wis.2d 452, 463, 113 N.W.2d 135 (1962) (stating that "the surrounding circumstances under which the alleged slander or libel was published must be taken into consideration"). But even if I look at the big picture of plaintiff as an upstanding citizen maligned by the charges, plaintiff still would fail to show that *Weliky's statement* harmed plaintiff's reputation so as to lower plaintiff in the eyes of the community or deter others from associating or dealing with him. If I look at the whole trail of events from derailment through the *Post–Crescent* article I also must consider plaintiff's own expert testimony that plaintiff's reputation was all but destroyed because of the charges and trial publicity. (*See* R. 29 at 133–135.)[6] No reasonable jury could then find that Weliky's statement in an article published after the trial could have caused him any more damage to his reputation than he had experienced already.

Weliky's statement was unlike that in *Milkovich,* where the court found that an article strongly implying that a person had lied under oath was actionable. According to the Court, the writer's language was "not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression." *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695. Here, while when taken alone We-

liky's statement may have implied fraud or bad faith by plaintiff, the tenor of the article completely negates any such impression—it indicates, in detail, that plaintiff had been cleared of the charge and sets up Weliky's comments as simply ones to be dismissed by the reader. Even a careless reader would have considered Weliky's comment to be equivalent to a mere vigorous epithet used by someone unhappy that things did not go his way. *See Milkovich,* 497 U.S. at 17, 110 S.Ct. 2695 (discussing *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), in which the Court found use of the word "blackmail" in context not defamatory).

Instead, Weliky's statement falls more in line with *Weiner,* where following an acquittal in a retried case, the losing prosecutor told a reporter the " '[t]his just proves that cases, unlike fine wine, get worse rather than better, with age.' " *See Weiner,* 210 F.3d at 1027. The Ninth Circuit classified the comment as opinion because, for one reason, it was in response to defense counsel's comment that the district attorney's office should not have proceeded with the second trial, and in the broad context of the case it was not surprising that each would have different views regarding the outcome. Further, in the specific context of the article, the court found that the audience would simply view the statement as an attempt to explain that it was not because the prosecution did a bad job that the case was lost. In other words, the audience would read the statement solely as one of opinion.

Similarly, in *Waldo,* the Supreme Court of Wisconsin suggested that every lawsuit has a winner and a loser: " 'Any suit is either with or without merit and either a harassment or not depending upon whose glasses are being looked through or whose opinion is being given or sought.' " *Waldo,* 45 Wis.2d at 209, 172 N.W.2d 680 (quoting with approval the trial court in that case). It then found that an editorial

6. While WCL referenced this evidence in its opening brief, plaintiff failed to respond to it.

describing the plaintiff's lawsuit, which had been dismissed, as a "nuisance" was non-defamatory opinion: "[t]o impart any defamatory meaning to these words would result in a strained and unnatural construction." *Id.* at 210, 172 N.W.2d 680.

Because no reasonable jury could find Weliky's statements defamatory summary judgment on plaintiff's claim must be granted.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion to amend the complaint is **GRANTED.** Plaintiff is **ORDERED** to submit, within 5 calendar days of the date of this order, a signed Amended Complaint identical to that attached to counsel's affidavit. For purposes of my decision on the summary judgment motion, however, the filing of the signed Amended Complaint will be deemed nunc pro tunc today.

**IT IS ORDERED** that with respect to the claims in the Amended Complaint defendant's motion for summary judgment is **GRANTED** on the malicious prosecution and defamation claims, and **DENIED** in regard to the abuse of process claim.